**In re the Marriage of: Timon Sans SOUCI, Appellant,**

v.

**Sherri Sans SOUCI, Respondent.**

No. SD 29247.

Missouri Court of Appeals,
Southern District,
Division One.

April 28, 2009.

Motion for Rehearing or Transfer
Denied May 14, 2009.

David S. Smith, Cuba, for Appellant.

Justin E. Head, Union, for Respondent.

ROBERT S. BARNEY, Judge.

Appellant Timon Sans Souci ("Husband") appeals the "Amended Judgment of Dissolution of Marriage" entered by the trial court which dissolved his marriage to Respondent Sherri Sans Souci ("Wife"). Husband asserts six points of trial court error. For ease of analysis we shall address Points V and VI of Husband's points relied on out of order.

The record reveals the parties were married in Iroquois County, Illinois, on May 21, 1988, and there were three children born of the marriage.[1] The parties had been residing in Missouri since 1995 and separated in November of 2006. Husband filed his "Petition for Dissolution of Marriage" on January 11, 2007, and Wife filed her "Cross Petition for Dissolution of Marriage" on February 9, 2007. At the time of trial, Husband was employed with Lowe's Corporation as he had been for the previous seven years and Wife was employed at the Bank of Sullivan, where she had been employed for "two or three years." The parties submitted a Joint Parenting Plan to the trial court and each submitted a proposed Form 14 relating to child support based on their own calculations.[2]

The trial court entered its Amended Judgment on April 29, 2008.[3] In its judgment, the trial court, *inter alia*, divided the parties' marital property and debts; adopted the parties' "Joint Parenting Plan;" granted monthly maintenance to Wife in the amount of $750.00; ordered Husband to pay monthly child support in the total amount of $977.00; and ordered Husband to pay a portion of Wife's attorney fees in the amount of $3,000.00. This appeal followed.

The standard for reviewing a judgment of dissolution is the same as in any court-tried action. *Gryder v. Gryder*, 129 S.W.3d 467, 470 (Mo.App.2004). The decree must be affirmed unless it is unsupported by substantial evidence, it is

1. The children were born on January 18, 1991; December 13, 1993; and February 19, 2002. All were minors when the petition in this action was filed.

2. We note the Joint Parenting Plan was not included in this record on appeal; however, the transcript reveals the parties agreed to "joint physical and joint legal custody" of the children with Wife's residence being the location designated for educational and mailing purposes.

3. The trial court entered its initial judgment in this matter on April 8, 2008; however, certain documents were not properly attached to the judgment and the trial court entered an Amended Judgment to correct this deficiency.

against the weight of the evidence, or it erroneously declares or applies the law. *In re Marriage of Reese,* 155 S.W.3d 862, 869 (Mo.App.2005); Rule 84.13(d).[4] "We do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregard contradictory evidence." *McCallum v. McCallum,* 128 S.W.3d 62, 65 (Mo.App. 2003). "The trial court is free to accept or reject all, part, or none of the testimony of a witness." *Holtgrewe v. Holtgrewe,* 231 S.W.3d 233, 235 (Mo.App.2007). We defer to the trial court's determinations of credibility in making our review. *In re Marriage of Colley,* 984 S.W.2d 163, 166 (Mo. App.1998).

■ Husband's first two points relied on are directed at the trial court's award of child support entered against Husband in the amount of $977.00 per month. We shall address these points conjunctively. In his first point relied on, Husband asserts the trial court erred in ordering child support in the total amount of $977.00 per month because such an order violated Rule 88.01 "in that the [F]orm 14 calculation did not account for the maintenance that Husband was ordered to pay to Wife." In his second point relied on Husband maintains the trial court erred in the amount of child support awarded because such an award "was an abuse of discretion in that it was based upon an assessment of monthly gross income amounts of the parties that was against the weight of the evidence."

■ In determining the amount of child support to award in a dissolution proceeding, the trial court must follow section 452.340, RSMo Cum.Supp.2007,[5] and Rule 88.01. *Sieg v. Sieg,* 255 S.W.3d 20, 23 (Mo.App.2008). In the first step in calcu-

lating child support, the trial court must use Form 14 to "determine for the record the presumptively correct child support amount." *Id.; see* Rule 88.01(b). "In determining the presumed child support amount under the first step, the circuit court can either accept one of the parties' Form 14 calculations or reject both parties' calculations and prepare its own Form 14." *Sieg,* 255 S.W.3d at 23. "In step two, the circuit court must consider whether or not to rebut the presumed correct child support amount, as found by the court, as being unjust or inappropriate after consideration of all relevant factors." *Id.*

In its comments for use of Form 14, the Missouri Court Rules set out the following explanation:

> *Line 1a: Adjustment to gross income for maintenance being received*
>
> *DIRECTION:* Enter the monthly amount of any court order for maintenance to the extent of the amounts actually being received toward current maintenance.
>
> *A. COMMENT:* If the court is establishing both child support and maintenance, the court shall first determine the appropriate amount of maintenance. This amount shall be included as an addition to the gross income (line 1a) of the parent receiving the maintenance and as a reduction in the gross income (line 2b) of the parent paying the maintenance.

Missouri Court Rules (2007), *Directions, Comments for Use and Examples for Completion of Form No. 14,* Vol. 1, p. 419.

Here, the trial court adopted Wife's prepared Form 14 and included it in its judgment in this matter. However, the Form 14 at issue contains no notations relating

---

4. All rule references are to Missouri Court Rules (2007).

5. All statutory references are to RSMo 2000 unless otherwise stated.

to the maintenance awarded to Wife such that it appears that amount was not considered in the rendering of the trial court's determination of child support. "Line 1a" of the Form 14 clearly states an amount should be entered for "[c]ourt ordered maintenance being received." Our review of the pertinent Form 14 in question reveals that this line contains no calculation. Further, "Line 2b" of Form 14 plainly states an amount should be entered for "[c]ourt ordered maintenance being paid." Again, this line is also blank. The trial court in this case did not follow the directions set out for completion of the Form 14 in that it "did not make any provisions in its Form 14 calculation for maintenance...." *Adams v. Adams*, 108 S.W.3d 821, 829 (Mo.App.2003). "The [trial] court misapplied the law in failing to properly calculate [the applicable] Form 14" and this "case must be remanded to the trial court for it to correctly recalculate the child support amount to include the amount of maintenance to be paid according to the applicable Form 14 *Comments, Directions for Use." Id.* Point I has merit.

Additionally, because the court must recompute the amount of child support we will not address the allegation of error set out in Point II. At its election the trial court will be permitted to receive additional evidence regarding either party's income.

■ In his third point relied on, Husband asserts the trial court abused its discretion and misapplied the law in dividing the marital estate in that it failed "to properly consider the statutory factors as set out in section 452.330 ... resulting in a division of the marital estate that was grossly unequal and one-sided."

■ Pursuant to section 452.330.1, the trial court in a dissolution proceeding is required to divide marital property and debts in such proportions as the court deems just after considering all relevant factors set out therein. *See Rivers v. Rivers*, 21 S.W.3d 117, 122 (Mo.App.2000). When dividing the marital property per section 452.330.1, the trial court must consider all the factors including: (1) "the economic circumstances of each spouse at the time the division of property is to become effective ...;" (2) how each spouse contributed "to the acquisition of the marital property, including the contribution of a spouse as homemaker;" (3) "[t]he value of the [non-marital] property set apart to each spouse;" and (4) the conduct of each spouse during the marriage. "Those factors listed in section 452.330.1 are not exhaustive, and the trial court has 'great flexibility and far-reaching power in dividing the marital property.'" *Long v. Long*, 135 S.W.3d 538, 542 (Mo.App.2004) (quoting *Farley v. Farley*, 51 S.W.3d 159, 165 (Mo.App.2001)). There is no set formula concerning the weight given to the factors considered under section 452.330. *Kester v. Kester*, 108 S.W.3d 213, 224 (Mo.App. 2003). " 'Disparity in the value of marital property awarded each spouse is justified if any of the relevant factors, statutory or otherwise, justify an unequal division.'" *Long*, 135 S.W.3d at 542 (quoting *Hayes v. Hayes*, 792 S.W.2d 428, 431 (Mo.App. 1990)).

■ A trial court is given broad discretion in dividing property in a dissolution action, and we will interfere with its decision only if the division is so unduly weighted in favor of one party that it amounts to an abuse of discretion. *Kirkwood v. Kirkwood*, 77 S.W.3d 675, 680 (Mo.App.2002). The trial court abuses its discretion only when its ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *In re Marriage of Holden*, 81 S.W.3d 217, 225 (Mo.

App.2002). "The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption." *Rivers*, 21 S.W.3d at 123. "The fact that the trial court awarded one party a considerably higher percentage of the marital property than it awarded the other is not *per se* an abuse of discretion." *Id.* "The division of marital property need not be equal, but must only be fair and equitable given the circumstances of the case." *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo.App.2000).

Husband testified at trial that he earned an average gross monthly income of $5,255.00 or $63,071.02 per year. During the pendency of the petition, Husband had been voluntarily paying Wife $1,600.00 a month to help "her maintain the household and do what she needed to do with it." Husband admitted he had been unfaithful to Wife during the marriage and carried on an extramarital relationship with another woman for three months while he was still residing with Wife. Husband also testified that Wife had an extramarital affair following the parties' separation.

Additionally, Husband testified the parties had no premarital property for the trial court to set aside. He related that as his separate property he was claiming a 2007 Victory motorcycle and a 2002 Dodge Stratus valued at a total of $23,000.00 which he purchased after the parties had separated.[6] He testified the parties' marital home was valued at $160,000.00 and requested it be awarded to Wife along with "the contents of the house ..." which he valued at $23,100.00. Further, Husband requested the parties' 2005 Town and Country minivan, valued at $10, 000. 00, and their Ford F-150 pickup, valued at $5,000.00, be awarded to Wife. Husband then requested he be awarded a 1997 Jeep Wrangler; a 2005 Yamaha motorcycle; a 1999 Legend boat with outboard motor; his life insurance policy, which had a cash value of $8,000.00; his 401(k) valued at $30,000.00; his Lowe's stock valued at $3,000.00 of which he had liquidated a portion the previous year; and his personal, sentimental items as part of the trial court's distribution of marital property.

Regarding marital debt, Husband testified the parties owed $110,000.00 on the mortgage of the marital residence and had a home equity line of credit under which $28,000.00 was owed.[7] Husband stated that because he wanted Wife to be awarded the house, she should also be allocated the debt on the home totaling $138,000.00. Husband requested that he be assigned the debt on three credit cards: a Lowe's credit card with an outstanding balance of $350.00; a Citibank Mastercard with an outstanding balance of $1,545.00; and the debt of a Visa credit card carrying an outstanding balance of $1,690.00.[8]

6. He stated there were loans with Wells Fargo and another entity on each of these items which exceeded the estimated fair market value of the items such that he agreed to assume those loans as debts.

7. Wife testified the home equity line of credit included money used to pay off the automobile loans on the Jeep and the minivan.

8. He related the parties at one time had a joint Chase Visa credit card; however, following the filing of the petition in this matter, Husband had his name removed from the account and related he had no idea what the balance was on that card as it was now in Wife's possession. Husband requested the debt on that particular credit card be assigned to Wife as her separate obligation.

At this juncture it should be pointed out that Husband's "Statements of Assets and Liabilities" and Wife's "Income and Expense Statement" were not included in the legal file; accordingly, all of the information recited in the opinion comes from the testimony of the parties and, in several instances, is contradictory.

Wife testified she had been a homemaker throughout a large portion of the parties' marriage and that she had a high school education. Wife related she had been employed with a bank for the last several years and that she earned between $1,800.00 and $1,900.00 per month.[9] Wife testified that during the pendency of the dissolution action, she was forced to borrow money and incur credit card debts in order to make ends meet, but she admitted Husband had been providing her with some support. She related she had approximately $1,000.00 in her bank account which sum was derived from "a personal loan." Wife stated that if she were not awarded $1,000.00 in maintenance per month she would not be able to meet her financial obligations. Additionally, she admitted that after the parties had been separated for eight months she became involved in a relationship with someone other than Husband.

Wife valued her personal property at $15,000.00 and the personal property in Husband's possession at $5,000.00. She stated she had no objections to Husband taking all his tools, guns, and his sentimental possessions among other personal property. Wife requested the trial court award her the marital home; half of Husband's 401(k); the 2004 minivan; the Ford pickup truck; the boat and trailer; and the cash value of the life insurance policy. Wife testified she should take on the "the debt, the mortgage and the home equity loan on the house" and the credit card with a balance of $1,500.00. Further, Wife requested the trial court award Husband his Lowe's stock valued at $3,000.00; his Jeep; the Yamaha motorcycle; the Victory mo-

torcycle; the Dodge Stratus; his personal property; and that he be assigned the Lowe's credit card debt.

In dividing the parties' marital property and debts, the trial court awarded Husband marital property totaling $70,000.00 and he was assigned $50,850.00 in marital debt. Wife was awarded $209,000.00 in marital property and she was assigned $139,500.00 in marital debt. Specifically, the trial court set aside to Husband fifty percent of his 401(k) valued at $15,000.00; his Lowe's stock valued at $3,000.00; his life insurance policy with a cash value of $8,000.00; his Yamaha motorcycle valued at $9,000.00; his 1997 Jeep Wrangler valued at $7,000.00; his Victory motorcycle valued at $18,000.00; his Dodge Stratus valued at $5,000.00; and his personal property valued at $5,000.00. The trial court then assigned the following marital debt to Husband: the secured "chattel mortgage" on the Victory motorcycle in the amount of $18,000.00; the secured "chattel mortgage" on the Dodge Stratus valued at $5,000.00; the Citibank Visa debt in the amount of $1,690.00; the Lowe's credit card debt in the amount of $360.00; the G.E. Money Account with the owed amount of $20,000.00; and the Wells Fargo Account with the owed amount of $5,800.00.[10] The trial court awarded Wife the marital home valued at $158,000.00 and allocated its attendant debt of $138,000.00 to her; half of Husband's 401(k) valued at $15,000.00; the minivan valued at $10,000.00; the Ford truck valued at $5,000.00; the boat and trailer valued at $6,000.00; and her personal property valued at $15,000.00. Wife was also required to assume the debt on the Chase Visa credit card.

9. We note Husband testified that Wife's monthly gross income was $2,068.00.

10. It is unclear to this Court if the secured "chattel mortgages" for the Victory motorcycle and the Dodge Stratus are different from

the G.E. Money Account indebtedness and the Wells Fargo indebtedness in that Husband testified the motorcycle loan was with Wells Fargo.

At the outset, we note Husband did not request findings of facts and conclusions of law pursuant to Rule 73.01(c), and the trial court made no findings of fact as to its basis for dividing the marital property in the manner in which it did. "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c); *Kirkwood*, 77 S.W.3d at 681. Reviewing the record in this manner, as we must, we cannot say the trial court abused its discretion in dividing the marital property.

Here, Husband specifically requested all the marital debt assigned to him by the trial court. We can find no error in the trial court's allocation of debt he requested be made. *See Long*, 135 S.W.3d at 544. Furthermore, the only things not awarded to Husband as marital property that he requested in his proposed division were the boat and trailer and the other 50% of his 401(k). Additionally, Husband requested that Wife receive the marital home, which was the parties' largest asset by far; the Town and Country minivan; the Ford F–150 pickup; and the majority of the personal property. As already stated, the mere fact that "the trial court awarded one party a considerably higher percentage of the marital property than it awarded the other is not *per se* an abuse of discretion." *Rivers*, 21 S.W.3d at 123. The record reveals the division at issue is "fair and equitable given the circumstances of the case." *Nelson*, 25 S.W.3d at 517. It was Husband's burden to overcome the presumption that the division of property entered by the trial court was correct and he has failed to carry that burden. *Rivers*, 21 S.W.3d at 123. Point III is denied.

In his fourth point relied on, Husband maintains the trial erroneously applied the law and abused its discretion in awarding maintenance to Wife under sec-tion 452.335. Specifically, Husband asserts the trial court "failed to properly consider the marital property awarded to Wife, . . . failed to properly consider Wife's earning potential, and . . . made insufficient findings that Wife was unable to meet her reasonable needs through appropriate employment."

"A maintenance award is 'aimed at closing the gap between the income of the spouse who seeks maintenance and that spouse's monthly expenses.'" *N.M.O. v. D.P.O.*, 115 S.W.3d 854, 857 (Mo.App.2003) (quoting *In re Marriage of Zavadil*, 806 S.W.2d 506, 512 (Mo.App. 1991)). "'Within the confines of the law and the evidence, the trial court has broad discretion in awarding maintenance.'" *Myers v. Myers*, 47 S.W.3d 403, 409 (Mo. App.2001) (quoting *In re Marriage of Thompson*, 24 S.W.3d 751, 754 (Mo.App. 2000)). "The determination of whether to award maintenance under section 452.335.1 is a two-step procedure." *Elrod v. Elrod*, 144 S.W.3d 373, 380 (Mo.App.2004). The first step of section 452.335.1 "requires the trial court to find that: (1) the party seeking maintenance lacks sufficient property, including marital property apportioned to that spouse, to provide for his or her reasonable needs; and (2) the party seeking maintenance is unable to support herself through appropriate employment." *Id.*; *see also Kirkwood*, 77 S.W.3d at 682. "Once these findings are made, section 452.335.2 requires that the trial court, in determining the amount and duration of its maintenance award, consider the ten factors enumerated in the statute and 'balance the reasonable needs of the spouse seeking maintenance with the other spouse's ability to pay.'" *Elrod*, 144 S.W.3d at 380 (quoting *Linton v. Linton*, 117 S.W.3d 198, 205 (Mo.App.2003)). When both steps have been satisfied, the statute provides that maintenance should

be awarded "in such amounts and for such periods of time as the court deems just . . . ." § 452.335.2.

"Although a trial court's decision regarding maintenance is presumed correct, a judgment on maintenance will be disturbed on appeal where it is improper under [the standard of] *Murphy v. Carron,* 536 S.W.2d 30, 31 (Mo. banc 1976) . . . ." *In re Marriage of Eck,* 904 S.W.2d 60, 62 (Mo.App.1995) (internal citation omitted); *see* Rule 84.13(d). " 'In the absence of a finding that the amount is patently unwarranted and wholly beyond the means of the spouse who pays, this [C]ourt will not interfere with the circuit court's award of maintenance.' " *Linton,* 117 S.W.3d at 205 (quoting *In re Marriage of Pahlow,* 39 S.W.3d 87, 93 (Mo.App.2001)). " 'Husband, who contends the circuit court erred in awarding any maintenance to [W]ife, bears the burden of proving the maintenance award 'shocks' this [C]ourt's sense of justice.' " *Id.* (quoting *Pahlow,* 39 S.W.3d at 93) (italics omitted).

Here, the trial court found that Wife "is unable to meet her reasonable needs without assistance from [Husband] which he is able to provide. This [c]ourt finds the maintenance for [Wife] is just and appropriate." As such, the trial court ordered Husband to pay Wife "$750.00 . . . per month as and for [Wife's] maintenance and support. The first payment shall be paid on the first day of May, 2008, and said monthly payment shall be made on the first day of each month thereafter until further order of this [c]ourt."

At trial, in addition to the financial details already recited in Point III above, Wife testified she originally felt she should receive maintenance from Husband from the date of the divorce until she remarried, but she opined she definitely needed maintenance for at least two years. Wife testified that while raising three children and working full time she had no time to go back to school in an effort to find a higher paying job. She also stated she wanted to decrease her debts and was hoping to refinance the marital home in the future. Wife testified that without maintenance she would be unable to pay the mortgage payment on the marital home, which is $949.00 per month, and her other household expenses on her salary alone. She related that after her basic monthly expenses she is "upside down" by $890.13 per month. Further, she stated that even when Husband was giving her $1,600.00 a month she still had to utilize her credit card and rely on loans from family members.

Based on the evidence, it appears the trial court correctly found Wife "lacks sufficient property, including marital property apportioned to [her], to provide for [her] reasonable needs . . . ." § 452.335.1(1). Wife earned approximately $1,900.00 per month, was apportioned no income-earning marital property, and testified to needing at least $900.00 per month in maintenance to be able to meet her needs. As previously related, the aim of maintenance is to close " 'the gap between the income of [Wife] and [her] monthly expenses.' " *N.M.O.,* 115 S.W.3d at 857 (quoting *In re Marriage of Zavadil,* 806 S.W.2d at 512). Maintenance in the present matter would clearly accomplish that goal.

Additionally, Husband asserts the trial court's maintenance determination "made insufficient findings that Wife was unable to meet her reasonable needs through appropriate employment." "The trial court is not required to specifically address each statutory factor" set out in section 452.335.2. *Schroeder v. Schroeder,* 924 S.W.2d 22, 26 (Mo.App.1996). In that Husband failed to request specific findings of fact and conclusions of law, "[a]ll fact issues upon which no specific findings are

made shall be considered as having been found in accordance with the result reached." Rule 73.01(c); *see Kirkwood*, 77 S.W.3d at 681. Husband has failed to carry his burden of proving the trial court's award of maintenance to Wife " 'shocks' this [C]ourt's sense of justice." *Linton*, 117 S.W.3d at 205 (quoting *In re Marriage of Pahlow*, 39 S.W.3d at 93). Point IV is denied.

 We now take up Husband's sixth point relied on wherein he maintains "the trial court erred, abused its discretion, acted contrary to the evidence on the record and lacked jurisdiction in awarding decretal maintenance to Wife with no termination date that exceeded Wife's prayer for relief."

In her "Cross Petition for Dissolution" Wife specifically requested maintenance be awarded in that she "is without sufficient property to provide for her reasonable needs and the needs of the minor children, and she is unable to earn a sufficient sum to provide for her needs and the needs of the minor children through her employment." As such, the trial court ordered Husband to pay Wife "$750.00 ... per month ... until further order of this [c]ourt."

 "Once a court determines that maintenance is appropriate, the court has broad discretion in determining the amount and duration of maintenance." *Craig–Garner v. Garner*, 77 S.W.3d 34, 39 (Mo.App.2002).[11] " 'There is a judicial preference for awards of unlimited mainte-

nance.' Limitation on the duration of maintenance is justified only where substantial evidence exists of an impending change in the financial conditions of the parties." *Id.* (quoting *Schroeder*, 924 S.W.2d at 27). "A maintenance award should not be based on speculation as to future conditions of the parties." *Id.* " 'Neither an appellate court nor a trial court may speculate on what the future might justify; rather, such a determination should be made in a proceeding for modification of the award upon a showing of changed circumstances.' " *Id.* (quoting *Whitworth v. Whitworth*, 806 S.W.2d 145, 148 (Mo.App.1991)).

Here, Wife requested maintenance in her petition of an unspecified amount and duration. At trial, she testified she believed that she was entitled to maintenance from Husband until she remarried; however, she did remark that, if that was not possible, she desired maintenance for at least two years. The trial court then awarded her maintenance of an unlimited duration. Husband now argues in his brief that the "court [went] beyond and outside the allegations in the pleadings and the prayer for relief, and assume[d] to adjudicate a matter not within the issues made up in the pleadings...." We disagree. Here, there was not an express waiver of maintenance. The trial court had broad discretion in awarding Wife maintenance of an unlimited duration and such an award is preferred in situations such as the present matter where there was no evidence of an impending change in

11. In *Craig–Garner*, 77 S.W.3d at 38, the wife testified "she was not seeking permanent maintenance, but rather she was only seeking assistance during the remaining term of her business lease." The trial court ordered modifiable maintenance to the wife in the amount of $750.00. *Id.* at 36. On appeal, the husband argued that the wife "waived her request for maintenance by her testimony that she did not want permanent maintenance, but rather was merely looking for assistance dur-

ing the remaining term of her lease." *Id.* at 38–39. The husband, thus, asserted "the trial court's award of maintenance constitutes error." *Id.* at 39. The appellate court found the matter "does not involve an express waiver of maintenance.... Rather, [the wife] simply testified that she would like help 'at least through the end of the lease.' " *Id.* Accordingly, the appellate court found "no waiver of maintenance beyond the term of the lease." *Id.*

the financial conditions of the parties. Additionally, we defer to the trial court's determinations in making our review. *In re Marriage of Colley*, 984 S.W.2d at 166. The trial court did not err in awarding maintenance to Wife of an unlimited duration. Point VI is denied.

█ In his fifth point relied on Husband asserts "the trial court erred, abused its discretion, acted contrary to the evidence on the record and lacked jurisdiction in awarding attorney fees to Wife that exceeded [her] prayer for relief." [12]

█ "The trial court has broad discretion to award attorney's fees in a dissolution proceeding and the award of attorney fees is presumed to be correct on appeal." *Abbott v. Perez*, 140 S.W.3d 283, 296 (Mo.App.2004). We will only reverse an award of attorney's fees upon a showing of abuse of discretion. *Id.* To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Id.* "The trial court is an expert on attorney fees and being familiar with the issues involved it can fix the amount of attorney fees without the aid of evidence if necessary." *Vanderpool v. Vanderpool*, 250 S.W.3d 791, 797 (Mo.App.2008). The trial court is free to accept or reject, all, part or none of the testimony of a witness regarding attorney fees. *Id.*

In her petition, Wife stated she is "without funds or assets with which to pay suit money, court costs, and attorney fees herein accrued wherein [Husband] is able to and should pay for [Wife's] attorney fees and costs of this action." At trial Wife testified she had been charged $1,000.00 in attorney fees up to the date of trial and she had $3,000.00 in "total fees after" the date of trial. In its judgment, the trial court found "after consideration of all relevant factors, including the financial resources of both parties, the merits of the case, and the actions of [Husband] during the pendency of this proceeding that [Husband] should assist in payment of [Wife's] cost and fees incurred in this proceeding." Accordingly, the trial court ordered Husband to pay $3,000.00 to Wife's attorney as an award of attorney fees.

As in Point VI, Husband again argues the trial court went "beyond the relief that Wife was asking for and the trial court offered no explanation to justify or support the inflated award of attorney fees." Here, Wife made no specific monetary request in her petition in relation to her claim for attorney fees and offered testimony at trial that she had incurred a total of $3,000.00 in attorney fees. The trial court's award of attorney fees was supported by Wife's testimony. We find no abuse of discretion in the trial court's award of the totality of Wife's attorney fees. Point V is denied.

That part of the trial court's judgment as it relates to the Form 14 calculation for child support is reversed and remanded for the trial court to recalculate the presumed child support amount utilizing the maintenance amount awarded to Wife. The trial court may also take additional evidence at that time relating to the respective monthly gross income amounts of the parties. In all other respects the judgment of the trial court is affirmed.

BATES, J., and SCOTT, P.J., concur.

---

12. We note that Husband does not technically challenge the amount of attorney fees award-ed by the trial court in this point relied on.