**Jerry Joe MILLER, Appellant,**

v.

**Laverda Kim MILLER, Respondent.**

**Nos. SD 28960, SD 29159.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 30, 2010.

Christina L. Kime, Piedmont, for Appellant.

Steven Privette, Willow Springs, for Respondent.

DANIEL E. SCOTT, Chief Judge.

Appellant (Husband) challenges the judgment dissolving his marriage with Respondent (Wife). His six points involve property division, maintenance, and attorney fees.

Our standard of review is the same as in any court-tried action. *Souci v. Souci,* 284 S.W.3d 749, 752 (Mo.App.2009).

> The decree must be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. We do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregard contradictory evidence. The trial court is free to accept or reject all, part, or none of the testimony of a witness. We defer to the trial court's determinations of credibility in making our review.

*Id.* at 752–53 (citations, footnotes, and quotation marks omitted). We will affirm if the judgment is correct on any tenable basis. *Owens v. Owens,* 219 S.W.3d 867,

871 (Mo.App.2007); *Koon v. Koon*, 969 S.W.2d 828, 831 (Mo.App.1998). Being so guided, we reject all but one of Husband's complaints. The trial court erred in not designating its maintenance award as either modifiable or nonmodifiable. We remand for correction of that oversight, and otherwise affirm the judgment.

### Facts and Background

Husband and Wife were married in 1970 and separated in December 2004. Shortly thereafter, Husband was ordered to pay Wife temporary maintenance of $1,000 per month. Evidence in this "long and hard-fought" case, as the trial court described it, was taken over four separate days in 2007.

Husband was in the Navy when the parties married. He retired in 1990 and started work for what now is DRS Technologies, where the trial court found he earned over $70,000 per year, in addition to military benefits of $2,757 per month [1] and income as a firefighting instructor. Just before the dissolution trial started in 2007, DRS eliminated Husband's job and offered 16 weeks' severance ($19,702). His vested DRS pension had a present value of $119,174.

Wife suffered significant medical problems, including cancer and a chronic back condition that had required two surgeries.

Primarily a homemaker, she became a school secretary after separation. At the time of trial, she grossed $1,890 and netted $1,281 monthly,[2] and her retirement benefit had a present value of $8,962.

### Property Division

The court awarded Wife marital property valued at $294,000, consisting of the unencumbered marital home ($200,000), Wife's $8,962 pension, an $8,000 bank account, a car, household and miscellaneous items, and a $59,875 judgment against Husband representing 50% of his DRS pension's value.

The court awarded Husband 100% of his military pension and $192,653 in other marital property.[3] The latter included half the value of the DRS pension ($59,875), "Cashed Investments after Separation" totaling $116,900,[4] a vehicle, two investment accounts, and various tools and personal items.

### Maintenance

Wife sought $1,500 monthly maintenance. The court found that her medical expenses were "significant," her medical problems may soon end her ability to work, and that dissolution would cut off her military dependent coverage.[5] The

---

1. Husband's Navy retirement was $2,550 per month when the parties separated. He later waived part of his retirement pay to increase his non-taxable disability benefit. *See Morgan v. Morgan*, 249 S.W.3d 226, 230 (Mo.App. 2008). At time of trial, his monthly benefits were split $501 disability and $2,256 retirement.

2. The judgment shows Wife's monthly net income as $1,181. As shown *infra*, this appears to be an error, but not one that changes the result.

3. Husband and Wife were wed for 20 of his 22 years in the service, so most of his Navy pension accrued during marriage. The judg-

ment lists that pension's value as "Unknown" because it was not established, but no part of it was included in the $192,653 figure allocated to Husband.

4. The court found that Husband received more than $116,900 after separation by closing eight investment accounts.

5. Wife relied on Husband's medical coverage during the marriage. She first had military medical benefits, then primary coverage through Husband's employer DRS, with military coverage as secondary. She lost her primary coverage after separation when Husband did not re-enroll her despite a court order to do so. She had coverage through

court found she lacked sufficient property to provide for her reasonable needs, could not support herself through appropriate employment, and thus needed maintenance.

As to the amount of maintenance, the court found Husband's economic circumstances superior to Wife's, and that Husband (age 57) was capable of working and earning a substantial wage, but chose not to do so after DRS eliminated his job. The court found Husband capable of earning, including his various retirement benefits, at least $4,500 per month, and that his relationship with another woman was a precipitating factor in the dissolution. After considering all factors, the court ordered Husband to pay Wife $1,000 monthly maintenance, but did not state whether it was modifiable or nonmodifiable.

### Attorney Fees

Wife requested $16,000 in attorney fees for the trial court proceedings. The court allowed $10,000, noting that Husband was not forthcoming before or during trial about his financial assets, retirement benefits, or romantic relationship, and Wife incurred additional attorney fees to ferret out information on these significant issues.

Wife also sought $10,000, but the trial court granted only $3,500, for her attorney fees on appeal.

### Property Division (Point IV)

 We address Husband's claims out of order. He challenges the property division as disproportionate because he was charged with the value of investment accounts that he liquidated, while Wife received the marital home and a $59,875 judgment representing half of Husband's DRS pension.

The simplest reason to deny Point IV is that it ignores Husband's military pension, which the trial court could not value, although Husband's DRS pension may provide a rough guide. The latter, with a monthly payout of $814 at age 65, had a present value of $119,174.[6] By contrast, Husband's military retirement, even after he waived part of it, pays $2,256 per month *now*.

 A property division need only be fair and equitable under the circumstances. *Souci*, 284 S.W.3d at 754. We disturb a trial court's broad discretion only if a division is so disproportionate as to show abuse of discretion. *Id.* We presume the division is correct, and Husband had the burden to prove otherwise. *Id.* He did not do so. We deny Point IV and affirm the property division.

### Maintenance (Points I—III)

Husband's first three points challenge the $1,000 monthly maintenance award, which was aimed at closing the gap between Wife's income and monthly expenses and involved a two-step analysis. *Souci*, 284 S.W.3d at 757; § 452.335. First, § 452.335.1 required the court to determine that Wife lacked sufficient property to provide for her reasonable needs and could not support herself through appropriate employment. *Souci*, 284 S.W.3d at 757. If the court so found, the second step was to consider § 452.335.2's ten factors in fashioning an appropriate award. *Id.* The

her employer at time of trial, but there was evidence that she needed a supplemental policy ($1,025 per month) for expenses not covered thereby.

6. We reject Husband's complaint about the DRS memo that established this present value. Husband did not object when the memo was offered or admitted into evidence, or to the same testimony by DRS's human resources director.

trial court enjoyed broad discretion as to maintenance; we will reverse only if its discretion was abused. *Workman v. Workman*, 293 S.W.3d 89, 98 (Mo.App. 2009).

### Need for Maintenance

■ Point I challenges the step-one finding that Wife needs maintenance, particularly that she cannot support herself through employment. Husband claims the court erred in calculating Wife's salary, which he argues is sufficient for her reasonable needs since she was awarded her car and the marital home free of debt.

Even if we accept Husband's arguments for modestly adjusting Wife's income and expenses,[7] her need for maintenance still is supported by the record as we must view it. The trial court deemed Wife's medical expenses "significant" and likely to increase. Wife has undergone two back surgeries, cannot walk more than 50 feet without pain, and cannot lift more than ten pounds. She is in remission for thyroid cancer and requires regular ultrasounds to check her status. Suffice it to say there was substantial evidence that even without mortgage or car payments, Wife's net income would not meet her medical expenses.[8] We deny Point I.

### Maintenance Amount

■ Point II claims the trial court failed, in step two of the maintenance analysis, to properly consider factors (1), (3), and (8) of § 452.335.2.[9] He argues that the parties' incomes were comparable; Wife had a paid-for home and automobile; Husband lost his job through no fault of his own and there was no evidence that he could replace it or earn $4,500 per month; and Husband suffered from disabilities that limited his ability to work. We accept some of his assertions, but they do not prove error.

Husband's arguments principally address factor (3), comparative earning capacities. Wife has a high school education, modest job skills, significant physical limitations, chronic medical problems, and spent most of the marriage as a homemaker. By contrast, Husband always worked outside the home, first in the military, then for DRS.

The court found Husband capable of earning $4,500 per month, including his various retirement benefits. Citing his monthly military benefits totaling $2,756.57, Husband essentially claims there was no basis to impute to him another $1,743.43. He argues against imputing income due to his DRS pension, since those benefits would be severely limited if

---

7. The evidence, including Wife's testimony, showed that her "pay-stub" net income was $1,281 monthly, not $1,181 as the trial court found. Wife's employer also was paying for her health insurance at the time of trial, although this arrangement was not guaranteed to continue.

8. Husband also claims a pay deduction for Wife's retirement plan ($123.34) should be counted toward her net income. Adding this sum would not change our analysis. Forcing Wife to forego modest retirement contributions to meet current expenses also is likely to make her needier in retirement, and in that respect, Husband's argument undercuts itself.

9. These are, respectively:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
(3) The comparative earning capacity of each spouse; and
(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

he had to start drawing them now. We tend to agree with Husband on that, but not with his challenge to the finding that he makes money as a firefighting instructor. The court did not have to believe Husband's testimony that he spent more than he earned for such work.

Husband quotes *Buchholz v. Buchholz,* 166 S.W.3d 146, 153 (Mo.App.2005), for the proposition that his pay at DRS "is not alone a sufficient basis upon which to impute income at those levels." The $1,743.43 at issue, however, is far less than Husband's DRS salary.[10]

Husband also argues that even in cases where imputation of income is warranted, there must be a showing that it could be earned. He cites *Garrison v. Garrison,* 846 S.W.2d 771, 774–77 (Mo.App.1993),[11] in which this court reversed imputation of $7,132 per month to an unemployed spouse. It *was* proper to impute income since the spouse was not seeking appropriate employment. *Id.* at 776. However, $7,132 was more than the record supported, so we reversed and remanded to reconsider that amount. *Id.* at 776–77.

In this case, the trial court could find from the record that Husband was able to work,[12] yet chose to stay unemployed:

[Counsel]: What effort have you made to look for a new job?

[Husband]: I haven't made any effort yet.

[Counsel]: You haven't prepared a resume?

[Husband]: No.

[Counsel]: When are you going to do that?

[Husband]: I'm going to the VA January 24th to increase my disability, and I don't think I'll be looking for a new job.

[Counsel]: You're not going to work? Is that right?

[Husband]: Right.

As in *Garrison,* the issue here is not imputation of income *per se,* but whether Husband could earn at least $1,743.43 monthly. The record, reasonable inferences, and common sense indicate he could do so; there was no abuse of discretion in so finding.

Husband also asserts that the court did not consider § 452.335.2's factor (8), which is Husband's ability to meet both his needs and Wife's need for maintenance. Husband estimated that his monthly expenses exceeded $5,000, but the court did not have

10. The judgment indicates that Mr. Barton, DRS's human resources director, "testified that Husband would be eligible for other employment should he choose to apply, but he has not." Husband claims there was no such testimony, only Wife's counsel's argument that "Garland Barton told me he would be eligible to come back to work. All he had to do was apply." As our opinion shows, whether or not Mr. Barton so testified, the record and reasonable inferences support a finding that Husband was capable of earning $4,500 monthly, including military benefits.

11. Husband's *Buchholz* and *Garrison* references involved child support, but similar principles apply regarding maintenance. *See Ramsey v. Ramsey,* 965 S.W.2d 365, 372 (Mo. App.1998).

12. Although Husband cites his "service-connected disabilities," he also stresses that he left DRS only because his job was eliminated and through no fault of his own. A reasonable inference is that he would still be working at DRS, despite any disabilities, but for elimination of his position. Also, Husband testified that he still planned to train firefighters all over Missouri. If he is ready, willing, and able to travel around the state and train firefighters, it is reasonable to infer that he is physically able to work for wages. Wife works and earns nearly what Husband would need to reach $4,500 per month, although the evidence suggests she is at least as disabled as he.

to accept that figure, just as it did not fully accept Wife's expense estimate.

Finally, the trial court's consideration of Wife's medical expenses, which we summarized under Point I, refutes Husband's claim that the court failed to consider § 452.335.2's factor (1), Wife's financial resources and ability to independently meet her needs.

Unless the amount of maintenance is patently unwarranted and wholly beyond Husband's means, we should not disturb it. *Souci*, 284 S.W.3d at 758. It was Husband's burden, as appellant, to prove the maintenance award shocks our sense of justice. *Id.* He failed to do so. Point denied.

### Point III

■ Point III—that the maintenance should have been designated either modifiable or nonmodifiable per § 452.335.3—is well taken. We remand with directions to enter an amended judgment correcting this oversight.

### Attorney Fees (Points V & VI)

■ Husband attacks both attorney fee awards as based "at least in part" on the trial court's (1) imputation of $4,500 monthly income to Husband without evidentiary support, and (2) failure to consider *other* relevant circumstances including that Wife was awarded the marital home and an automobile free of debt. The latter claim is *ipse dixit*—there is no showing or reason to think the trial court did not consider "all relevant factors" under § 452.355.1, including its division of marital property, in making these awards.

Husband's imputed income complaint was considered and rejected above. Moreover, what the judgment says is that "Husband is in a superior financial position considering the comparative income and financial resources of the parties." This

appropriate finding (§ 452.355) is supported by the record, notwithstanding Husband's income argument, since he had adequate property from which to pay such awards.

■ Husband also claims the evidence was insufficient to support a $3,500 award for attorney fees on appeal. When Husband made this argument in the trial court, Wife's counsel replied that the court was an expert on attorney fees, but offered to reopen the case and testify on the issue. The court's response was that it had heard the trial evidence and:

I certainly have enough evidence to know there is some work involved in an appeal, including reviewing transcripts, and preparing motions, and briefs for the appellate court, and oral argument if that's authorized. And I know the value charged. I don't have it on the tip of my tongue, but I can go back and look at the record and find that in the fee that is charged.

So, I do believe I have to overrule a motion to dismiss or to rule for [Wife] and will do so at this time. Could I have more evidence? Yes. Do I have all the evidence? Probably not, but I believe I have sufficient evidence certainly under the case that you submitted to me, which is basically what they had there, enough to make an award if I so find.

"Because the trial court is an expert on attorney fees, and familiar with the issues involved, it can fix the amount of attorney fees without the aid of evidence if necessary." *In re Kreutzer*, 50 S.W.3d 334, 341 (Mo.App.2001). *See also Souci*, 284 S.W.3d at 760; *Vanderpool v. Vanderpool*, 250 S.W.3d 791, 797 (Mo.App.2008).

■ The trial court had broad discretion to grant attorney fees. Its awards are presumed correct on appeal and we will reverse only for abuse of discretion.

*Souci*, 284 S.W.3d at 760. Finding none here, we deny Husband's points and affirm the attorney fee awards.

## Conclusion

The result here is dictated by the standard of review. Husband's complaints, Point III excepted, involve areas of broad trial court discretion. We do not consider them *de novo*, reweigh the evidence, or speculate on how we might have ruled. Rather, it was Husband's difficult burden to show the subject rulings were so illogical, arbitrary, and unreasonable "as to shock one's sense of justice and indicate a lack of careful consideration." *Souci*, 284 S.W.3d at 754.

This judgment and record reflect careful consideration of the issues. The property division, attorney fee awards, and findings that Wife needs maintenance and the amount thereof do not shock us or offend our sense of justice. The standard of review thus directs us to deny Points I, II, IV, V, and VI, and to affirm the judgment with respect to those claims of error.

Accordingly, we grant Point III and remand for entry of an amended judgment stating whether the maintenance award is modifiable or nonmodifiable as required by § 452.335.3. We affirm the judgment in all other respects and deny all motions taken with the case.

LYNCH, P.J., concurs.

RAHMEYER, J., concurs in result in separate opinion.

NANCY STEFFEN RAHMEYER, Judge, concurring.

I concur in the result but write separately to note that this decision was driven by the facts of this case, particularly the

evidence before the trial court that Husband secreted money and was not forthcoming with the financial information necessary for the court to make its decision. I am concerned with several aspects of the trial court's decision being used as precedent in a later case. My first concern is the interplay between the property award and maintenance: Husband was awarded his military pension of $2,757 per month; that pension was never valued at trial. The only other major items of marital property awarded to Husband were the investments that had been cashed after the separation (which Husband claimed were no longer in existence but the trial court could have found to be hidden in various accounts) and one-half of the DRS pension, which I will discuss in the next paragraph. The trial court specifically noted the monthly retirement benefits when discussing Husband's ability to pay maintenance and imputed $4,500 per month in income to him despite the fact that Husband lost his job through no fault of his own,[1] was fifty-seven years old, was working minimally as a firefighting instructor, and had his own health issues. I am troubled by the assumption that Husband must continue to work at his age at the same level and income despite the fact that he has already retired from two different jobs. Neither the courts nor the legislature have addressed the issue of when the person paying maintenance should be allowed to retire, and this may not be the appropriate case in which to do so, but at some point that issue simply must be addressed. Equally troubling is the fact that the asset that Husband was awarded is also considered as income in determining maintenance. If more than one-third of awarded pension is awarded to Wife as maintenance, then Husband's property award is

---

1. The trial court found that Husband would be eligible for other employment at DRS, should he choose to apply, but that finding is unsupported in the record.

considerably less. As I noted earlier, the only reason I concur in this is because no value was given to the pension at trial and the trial court could have found that even two-thirds of the pension to Husband amounted to an equitable distribution of property.

My second concern is the DRS pension. Husband and Wife were each awarded one-half of the pension from DRS Technologies; however, there was absolutely no evidence of how the present value of the pension was determined. There was evidence that if Husband tried to collect the pension benefits during the year of the divorce, he would receive $447.32 per month; if he waited until he was sixty-five years of age, he would collect $813.31 per month. Furthermore, he was only guaranteed five years of benefits should he die prior to the initial five-year period. In this case, he would be paid a minimum of $26,839.20 if he collected at age fifty-six and $48,798.60 if he started collecting benefits at age sixty-five. Despite the drastic difference in the pension benefit analysis, the trial court valued the pension at $119,174 and awarded wife a judgment of $59,875 for those benefits. Also troubling is that there is no such liquidated asset for the DRS pension account in the amount of $59,875; that judgment will bear a nine percent interest rate.[2] I am mindful that when our Supreme Court held that pension plans may often be the most valuable asset belonging to a married couple, it also noted that it is not mandatory that pension benefits be divided between spouses, whether they be fixed or otherwise, where other assets are available. *Kuchta v. Kuchta,* 636 S.W.2d 663, 664, 666 (Mo. banc 1982). In this case, it will take Hus-

band over twenty-two years to pay the judgment of $59,875 plus interest from the pension benefits if he takes the benefit at the earlier age and has his entire DRS monthly pension benefit as the sole asset from which to pay the judgment. If he defers payment until age sixty-five, why should Wife benefit in those interim years? In most cases, that is not an equitable division of the pension benefits. The only reason I concur in this result is the specific finding by the trial court that there may be other assets hidden by Husband available to pay that judgment. For these reasons, I concur in the result of affirming the trial court ruling but note caution in doing so.

---

**2.** That rate was mandated by the legislature in 1979, and while it no doubt acts as an incentive to pay the judgment, it no longer represents a reasonable return on investment in the today's economic climate. Although

the question of post-judgment interest is best left for the legislature, in a case such as this when there is no liquidated debt, trial judges should be aware of the issue.