In re the Marriage of Bonnie Jane
MORSE, Petitioner/Respondent,

v.

George Douglas MORSE,
Respondent/Appellant.

No. SD 31443.

Missouri Court of Appeals,
Southern District,
Division Two.

April 27, 2012.

**50** 

J. Christopher Allen, Lebanon, MO, for Appellant.

Benjamin J. Berkstresser, Marshfield, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Presiding Judge.

George Douglas Morse ("Husband") appeals the trial court's "Amended Judgment and Decree of Dissolution of Marriage," dissolving his marriage to Bonnie Jane Morse ("Wife") and dividing the parties' property and debts. We affirm.

### Factual and Procedural History

Husband and Wife married on December 4, 1993. However, the parties lived together for approximately ten to eleven years before marrying and during this time, had two children together.[1] Husband and Wife separated on or about September 13, 2008, almost fifteen years after they were married. On October 3, 2008, Wife filed her "Petition for Dissolution of Marriage"; Husband subsequently filed his "Counter–Petition for Dissolution of Marriage." Husband and Wife owned and operated a 331–acre dairy farm that included a home, a large amount of personal property, equipment, and dairy cattle.[2]

Wife testified that while the dissolution was pending, Husband diverted and attempted to secret substantial funds received from Dairy Farmers of America ("DFA") and from "Deaf Smith Electric Coop," without Wife's knowledge or consent. Wife discovered a DFA equity check had been mailed in 2009 to an address in Vermont, and that a "Deaf Smith Electric Coop" check had also been received by Husband. Husband admitted to having possession and/or taking receipt of monies received from both entities. Husband spent part of the money received, and put the remainder in a certificate of deposit. Husband also admitted he did not provide full and truthful answers during his depo-

---

1. The trial court found the children were emancipated.

2. The trial court valued the farm at $660,000 based on the appraisal of Jerry Glore.

sition regarding the source of a $6,000 contribution he made to Wife. He admitted that while he knew the source of the $6,000 at the time of the deposition, he "[j]ust didn't want to tell [Wife's attorney]."

### Loans from Bill Lomore [3]

Husband testified that in 2003, his long-time friend, Bill Lomore ("Lomore"), "loaned" him $100,000 in cash. Husband stated there were no repayment terms decided or written up regarding repayment of this alleged loan. Husband also testified that Lomore loaned him additional money, including three checks totaling approximately $43,000. Husband testified no specific terms for repayment of the $43,000 were made either. Husband presented Exhibit "S" during trial, which was a document prepared by Husband showing how the loans from Lomore were used by Husband and Wife. The exhibit stated the $100,000 in cash was used to pay for labor on the house and farm, various equipment, and miscellaneous things around the farm. The exhibit showed that the $43,832 in checks went for feed/silage for the cattle.

Husband testified that Wife did not communicate with Lomore on any of the alleged loans. He further admitted there were no terms for repayment of the alleged loans, nor had any payments been made on the alleged loans. Husband also admitted that on the eve of trial, he changed his property schedule so that the alleged debt owed to Lomore would be set aside to him.

Wife testified she had no direct communications with Lomore in connection with the $100,000, and that all information regarding the money came from Husband. Husband told her the money was going to be used to try and acquire real estate from a neighbor. However, the money was not used for this purpose. Wife testified that besides the $100,000 in cash, Lomore also gave Husband other checks, but she "didn't see them" except "one went into [their] account." Wife testified that from 2003 to 2008, Husband gave her no instructions about making payments to Lomore on the alleged loans. Lomore never contacted Wife requesting payment or to provide directions about repayment of the loans. Wife did not make any payments to Lomore.

Wife testified she had initially identified the "obligations" to Lomore on her schedule of property. She explained that she had included the obligations because Husband "had them on his, and I assumed they should be on mine[.]" Wife testified she amended her property statement to reflect changes in circumstances and changes in information. Wife explained that she omitted the Lomore obligations because she did not have any "concrete evidence" they were loans and had listed them only when Wife and Husband were working together to settle the issues. Wife acknowledged being aware of money when Lomore gave it to Husband, but she testified she never had any direct or indirect contact with Lomore regarding this money. Further, Wife said Lomore had never contacted her requesting repayment or "stating a balance" owed.[4] Wife testi-

---

**3.** Bill Lomore is referred to interchangeably throughout the case record as "Lamore" and "Lomore." Although the record uses both spellings, there is no dispute he is one person referred to with different spellings.

**4.** Wife additionally testified Husband and Wife received a $50,000 loan from Husband's mother, Beatrice Morse ("Beatrice"), to pur-

chase an additional 200 acres. Beatrice did not take a deed of trust, but made an amortization schedule for repayment of the loan. Wife had made payments and was current on monthly payments that were in accordance with the schedule. Wife testified that the monthly payment to Beatrice was $395.40, and that the loan had an interest rate of 5

fied she believed there was no intent by Husband to repay the money to Lomore.

### Wife's Debts for Vehicles

Wife testified that she took out a loan in her name for a 2006 Dodge Durango. She testified her son Nathan loaned her a down-payment of $5,000 for the vehicle. Wife testified she purchased the vehicle because she did not have a vehicle and needed one. Wife also testified that after the separation, she purchased a Honda four-wheeler for use on the farm and the payment to Union Bank was being paid out of Wife's separate "Wachovia personal property account."

### Husband's Insurance Policies and IRAs

The parties possessed substantial personal property, including several policies of insurance and IRAs. Wife's final property schedule identified a "New York Life IRA" valued at approximately $20,000, and "(4) New York Life Policies" with an approximate total value of $45,000 "possessed" by Husband. Wife requested the trial court set aside to Husband the New York Life IRA—which she believed was $20,000—and the insurance policies.

Husband testified that he had "pulled out an insurance policy . . . in the amount, about $14,000," and deposited the money in a certificate of deposit. He testified that he listed it as not quite $14,000 on his property schedule, but that he contributed an additional $6,000, making the value closer to $20,000.

On April 11, 2011, the trial court entered its "Judgment and Decree of Dissolution of Marriage." The trial court divided the parties' assets and awarded Husband the sum of $269,305 to equalize the division of marital property and debt. The trial court also attached the "Court's Findings and Conclusions" that had been filed March 18, 2011. In these findings and conclusions, the trial court found the debt on the 2006 Dodge Durango in the amount of $4,808, and the debt on the Honda four-wheeler in the amount of $4,269.71, to be marital debts. Additionally, the trial court did not find Husband's debt to Lomore to be a marital debt "based upon several troubling factors[.]" These factors included: (1) undisputed evidence that Husband alone arranged and agreed to the debt; (2) no evidence to indicate why Lomore would have made a $143,000 non-interest bearing loan; (3) there was no promissory note or any document as evidence of the debt; (4) Wife never talked with, had any contact with, or was ever contacted by Lomore regarding repayment of the alleged loan; (5) no payments had been made or requested since the loan was made; (6) Wife's claim that if there was a debt, collection of the debt would be barred by the statute of limitations had merit; and (7) the "uncorroborated testimony by [Husband] of the making of an unsecured, undocumented, non-interest bearing, pay when you feel like it loan in the amount of $143,000.00 is insufficient for this Court to declare a marital debt." Incorporated in the judgment was the "Consolidated Statement of Marital and Non–Marital Assets and Debts of Petitioner and Respondent," which included a summary of the property schedule submitted by Husband, where the trial court listed under "Life Insurance" an "N3156740 IRA" with a value of $13,917.06, and a separate listing under "Retirement Pension" a "New York Life

---

percent. Wife testified there had been a second loan from Beatrice, but it had been paid. Husband acknowledged that Beatrice had provided them two loans—one paid in full,

and one with an outstanding balance. The trial court found the remaining balance of $29,078.86 owed to Beatrice to be marital debt.

IRA" identified by Wife as being valued at approximately $20,000.

On May 12, 2011, Husband filed a "Motion to Amend to Correct Incompleteness and Errors in Judgment," including correction in verbiage and incorporation into the judgment certain exhibits referenced by the trial court. On May 31, 2011, the trial court entered a "First Amended Judgment and Decree of Dissolution of Marriage," making no substantive changes, but clarifying certain issues and exhibits attached, and incorporating the March 18, 2011 findings and conclusions.

This appeal followed. Husband claims the trial court erred in its distribution of non-marital property, marital property, and marital debt in that: (1) the $143,832 in loans from Lomore, should have been considered marital debt; (2) Wife's debts for the vehicles purchased after separation should not have been considered marital debts; and (3) Husband's IRA was listed and valued twice to Husband. The primary issues necessary for resolution of this appeal are:

1. Did Husband demonstrate the trial court erred in finding the Lomore loans were not marital debt because there was no real expectation that Lomore would seek repayment of the loans?
2. Did Husband demonstrate the trial court erred in finding the Honda and Durango debts were marital?
3. Did Husband demonstrate the trial court erred in awarding Husband a single IRA account twice?

## Standard of Review

██ In a dissolution case, this Court will affirm the trial court's decision "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Jennings v. Jennings*, 327 S.W.3d 21, 23 (Mo.App. E.D.2010). "We do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence." *McCallum v. McCallum*, 128 S.W.3d 62, 65 (Mo.App. E.D. 2003). "We defer to the trial court's determinations of credibility in making our review." *Souci v. Souci*, 284 S.W.3d 749, 753 (Mo.App. S.D.2009).

██ "A trial court is given broad discretion in dividing property in a dissolution action, and we will interfere with its decision only if the division is so unduly weighted in favor of one party that it amounts to an abuse of discretion." *Souci*, 284 S.W.3d at 754. We presume the division of property is correct and the challenging party bears the burden of overcoming this presumption. *Id.* at 755. " 'The division of marital property need not be equal, but must only be fair and equitable given the circumstances of the case.' " *Id.* (quoting *Nelson v. Nelson*, 25 S.W.3d 511, 517 (Mo.App. W.D.2000)).

## Analysis

In arguing the trial court erred in its distribution of non-marital property, marital property, and marital debt, Husband's first subpoint contends that the $143,832 in alleged loans from Lomore should have been deemed marital debt and divided between the parties. We, however, disagree.

██ "Any liability which a party is not likely to have to pay may be excluded as a marital debt." *Panettiere v. Panettiere*, 945 S.W.2d 533, 543 (Mo.App. W.D. 1997). "Whether or not the funds transferred to the parties were bona fide loans from [Lomore] with a continued expectation of repayment was purely a question of fact, heavily dependent on the trial court's determination of the credibility of the wit-

nesses." *Id.* "This court defers to the trial court's ability to draw conclusions where there is conflicting testimony and to weigh the credibility of the witnesses, their sincerity, character, and other 'trial intangibles' which the record may not reflect." *Id.*

■ Husband attempts to retry this issue by citing to selective testimony, namely his, that these were loans and he intended to pay Lomore back. The trial court, however, did not believe Husband's testimony, and it was squarely within the trial court's discretion to believe all, none, or part of his testimony—even if uncontradicted. *Noland–Vance v. Vance,* 321 S.W.3d 398, 416 (Mo.App. S.D.2010). While Husband emphasizes the fact that both Husband and Wife had possession, use, and enjoyment of these alleged loans, this fact was not in dispute. The alleged loans were not deemed marital debt because the trial court did not find Husband's uncorroborated testimony sufficient to declare these alleged loans as marital debt in that the trial court did not believe there was a requirement the alleged loans be repaid. This conclusion was supported by substantial evidence.

Husband testified that Lomore loaned him money on multiple occasions; however, Husband testified there were no terms decided or written up regarding repayment of these alleged loans. He further admitted that there had been no payments made on the alleged loans. Husband also admitted that on the eve of trial, he changed his property schedule so that the alleged debt owed to Lomore would be set aside to him.[5] Additionally, Lomore never

contacted Wife requesting repayment or to provide payment instructions, and Wife never made any payments to Lomore. Wife further testified she believed there was no intent by Husband to repay the money.

Considering the evidence, Husband did not demonstrate that the trial court erred in finding that the alleged loans from Lomore were not debts of the parties to be considered in the division of marital property because there was no real expectation that Lomore would seek repayment for these amounts.[6] *See Panettiere,* 945 S.W.2d at 543. This point is denied.

■ We are also unpersuaded by Husband's claim that the trial court mischaracterized the debt for the Durango and Honda as marital debts. "Marital debt is debt acquired subsequent to commencement of the marriage unless an exception applies." *Travis v. Travis,* 163 S.W.3d 43, 48 (Mo.App. W.D.2005). Specifically, monies borrowed after parties separated, but while they are still married, are presumed marital. *In re Marriage of Pahlow,* 39 S.W.3d 87, 92 (Mo.App. S.D.2001). Husband does not dispute these debts were incurred subsequent to the parties' marriage, and sets forth no argument these debts constitute an exception to this rule. Therefore, Husband did not demonstrate the trial court erred in finding the Honda and Durango debts were marital. Accordingly, this point is also denied.

■ Finally, Husband claims the "Amended Judgment lists and values the IRA awarded to [Husband] twice, once as Insurance at $13,917.06 [ ] and once as

---

5. Wife also sufficiently explained her reasoning in initially identifying these alleged loans in her schedule of property and then omitting them in her amended property statement.

6. Additionally, under section 516.120 RSMo 2000, the parties made no payments on the alleged debt and the applicable statute of limi-

tation for collecting the debt—five years—had run. *Cf. Panettiere,* 945 S.W.2d at 542 (where the parties executed a $20,000 promissory note in favor of husband's father, but made no payments, the applicable statute of limitation for collecting the note—ten years—had run under section 516.110 RSMo 2000).

Retirement, New York Life IRA at $20,000." Husband, however, presents no additional reasoning or evidence supporting the claim the IRA was awarded twice, aside from this single sentence. It is Husband's burden to demonstrate error of the trial court. *Souci,* 284 S.W.3d at 755. Husband has failed to direct us to any evidence supporting this claim. In fact, our review of the property schedules presented and accepted by the trial court, and the testimony of the parties, support a conclusion that these were two separate accounts. The parties possessed substantial personal property, including several policies of insurance and IRAs. Wife's final property schedule identified a "New York Life IRA" valued at approximately $20,000. Incorporated in the Amended Judgment was the Consolidated Statement of Marital and Non-marital Assets and Debts of Petitioner and Respondent, which included a summary of the property schedule submitted by Husband, where the trial court listed under "Life Insurance" a "N3156740 IRA" with a value of $13,917.06, and a separate listing under "Retirement Pension" a "New York Life IRA" identified by Wife as being valued at approximately. $20,000. Unfortunately, Husband's amended property schedule, which was received into evidence and before the trial court, was not deposited with this Court. As such, this Court presumes the evidence excluded from the record on appeal is favorable to the trial court's judgment and unfavorable to Husband. *Peine v. Peine,* 200 S.W.3d 567, 580 (Mo. App. W.D.2006). Again, Husband has failed to demonstrate the trial court erred in awarding husband a single IRA account twice. This point is denied.

We affirm the trial court's judgment.

BARNEY and SCOTT, JJ.—Concur.