**Anne SIEG, Respondent,**

v.

**Dennis SIEG, Appellant.**

No. WD 68137.

Missouri Court of Appeals, Western District.

April 29, 2008.

Rehearing Denied July 1, 2008.

Ross Stanley Myers, Lee's Summit, MO, for appellant.

Anne Marie Sieg, Lee's Summit, MO, for respondent.

PAUL M. SPINDEN, Presiding Judge.

Dennis Sieg appeals from the circuit court's judgment modifying the Siegs's 1998 dissolution judgment. The circuit court ordered Sieg to pay $688 in monthly child support. A brief time later, Sieg began to pay certain expenses for the children and to deduct them from his child support payments.

During July 2005, Anne Sieg approached the Missouri Department of Social Services, Family Support Division regarding Sieg's failure to provide child support. Pursuant to Section 454.476, RSMo 2000, the division entered an administrative order against Sieg for not paying child support.

During 2005, Anne Sieg also filed a motion to modify the dissolution judgment. In response, Sieg filed a counterclaim for breach of contract in which he asserted that the parties had agreed to allow Sieg to deduct certain expenses from his child support payments and that his former wife had breached the agreement by reporting him to the Family Support Division, which entered an administrative order against him for not paying child support. During January 2007, the circuit court entered a

judgment increasing Sieg's child support obligation. The circuit court also denied Sieg's counterclaim.

Sieg asserts that the circuit court erred in denying his counterclaim for breach of contract. In denying Sieg's counterclaim, the circuit court declared:

> This Court finds that [Dennis Sieg] seeks to allege the same claim in his cause of action discussed below and that such claim is barred by the doctrine of Res Judicata such that [he] is collaterally estopped from raising the issue again.
>
> . . . .
>
> [T]he Court additionally finds that [Dennis Sieg's] testimony that an agreement existed between [him] and [Anne Sieg] that she would agree to allow specific deductions off of her child support—after hearing the evidence at trial—is not credible.
>
> . . . .
>
> The Court finds that it is well-settled Missouri law that parents cannot contract away the rights of children to look to their parents for support, and any agreement does not affect the power and duty of the court to determine the matter of child support.
>
> . . . .
>
> At issue, therefore, is that *even if* a contract, either express or implied, was entered into in the present case, the evidence would not support a claim for breach of contract because the parties were without the authority to enter into such an agreement.[1]

■ To reverse the circuit court's judgment, Sieg would necessarily have to establish that all of the reasons that the circuit court articulated in its judgment were wrong. *See In the Interest of B.J.K.*, 197 S.W.3d 237, 246 (Mo.App.2006) (appel-lant must challenge all grounds for terminating parental rights to succeed on appeal). Sieg does not challenge all three of the grounds averred in the circuit court's judgment but focuses the majority of his argument on whether or not *res judicata* barred his claim. He also argues that the circuit court was wrong about the evidence not establishing that he had an agreement with his former wife concerning child support. Sieg, however, makes no argument refuting the circuit court's denial of his counterclaim on the basis that the agreement would be invalid and, therefore, has failed to carry his burden on appeal. This reason alone is a sufficient basis for denying Sieg's point.

■ Furthermore, in establishing that an agreement existed, Sieg points only to his own testimony at trial that he and his former wife had executed an agreement to reduce his child support obligations because he was paying other expenses. The circuit court expressly found that his testimony was not credible. As the trier of fact, the circuit court was free to discard his testimony as not credible. *Pickens v. Brown*, 147 S.W.3d 89, 92 (Mo.App.2004). Because the circuit court rejected his testimony as incredible, Sieg never established that he and his former wife had entered into this agreement. We, therefore, reject his point.

In the alternative, Sieg claims that, even if there was no agreement allowing him to deduct his expenses from his child support payments, he had an agreement with Anne Sieg to split certain costs, so Anne Sieg owes him money. Sieg did not carry his burden of proving this claim. To support it, Sieg introduced an extensive list of the items that he purchased for the children. He also points to Anne Sieg's testimony that she had agreed to permit her former

---

1. Emphasis was in the original.

husband to split certain additional expenses, such as their child's vehicle, car insurance, and property tax. Sieg, however, points to no testimony, other than his own, that Anne Sieg failed to pay for her share of these expenses. We deem the circuit court to have disbelieved Sieg's testimony. *Id.*

■ Sieg next complains that the circuit court erred in increasing his child support obligation to $1,236 a month because it erroneously determined that he had monthly income of $10,000. Sieg claims that the circuit court erroneously assumed that $8,000 of the $10,000 came from his operation of a convenience store.

We cannot determine from the record how the circuit court determined that Sieg had monthly income of $10,000. Even viewing the evidence in the light most favorable to the circuit court's judgment, we do not discern a sound basis from the evidence presented for a finding that Sieg's monthly income was $10,000. We, therefore, reverse and remand the case to the circuit court with instructions that it reconsider Sieg's gross monthly income. Given this disposition, we do not reach the issue of whether or not the circuit court was correct in determining that Sieg made $8,000 per month from his convenience store.

■ "In determining an award of child support in any proceeding, Section 452.340.8 and Rule 88.01 require the trial court to follow the two-step procedure set forth in *Woolridge v. Woolridge,* 915 S.W.2d 372, 379 (Mo.App.1996)." *Nelson v. Nelson,* 195 S.W.3d 502, 509 (Mo.App. 2006) (footnote omitted). In step one, the circuit court must determine for the record the presumptively correct child support amount under the Form 14 calculations. *Id.* In determining the presumed child support amount under the first step, the circuit court can either accept one of the

parties' Form 14 calculations or reject both parties' calculations and prepare its own Form 14. *Id.* The circuit court can do its own Form 14 by either completing a Form 14 worksheet to become part of the record or by articulating on the record how it calculated its own Form 14. *Id.* In step two, the circuit court must consider whether or not to rebut the presumed correct child support amount, as found by the court, as being unjust or inappropriate after consideration of all relevant factors. *Id.* at 510.

■ In reviewing an award of child support, we review the award in light of the circuit courts' application of the *Woolridge* procedure to determine whether or not it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Id.* We then review to determine whether or not the circuit court abused its discretion in rebutting the presumed child support amount. *Id.*

The circuit court rejected the parties' Form 14 as being incorrect, but it did not complete its own Form 14 and make it a part of the record. Instead, it articulated its calculation in its judgment. Concerning Sieg's gross income, the circuit court found that he was able to earn $10,000 a month, and, as the judgment stated, it "impute[d] that [amount] to him as monthly income."

■ That a parent cannot escape his child support responsibilities by deliberately reducing his income is well-established law. *Id.* at 510–11. On Form 14, the Supreme Court has indicated in the "Comments for Use and Examples for Completion" that the circuit court may impute income. These comments indicate that income may be imputed "[i]f a parent is unemployed or found to be underemployed." Proper circumstances for imput-

ing income typically involve a parent's voluntarily reducing his or her income without justification, such as when he or she quits a job for the purpose of reducing his or her child support. Imputation of income is also appropriate when a parent voluntarily reduces his or her income with justification, but only if the evidence shows that he or she did not use best efforts to obtain employment. *Id.* at 511.

 To have imputed the entire amount of Sieg's gross monthly income of $10,000, the circuit court would have had to conclude that Sieg was unemployed—not underemployed. *Id.* Had the circuit court deemed Sieg to be underemployed, it would have had to impute $10,000 to be *added* to his earnings, but the circuit court could impute the full amount of Sieg's income to him only if it found that he was unemployed.[2] Sieg certainly was employed. As the circuit court found, he was self-employed as the president of A & M Food Marts, Inc., and as an engineer, and he owned numerous rental properties. Although the parties disagreed about the amount of income that Sieg earned, they agreed that he was employed. The record, therefore, does not support the circuit court's imputation of $10,000 to Sieg as his entire gross monthly income.

Thus, the circuit court's calculation of the Form 14 was incorrect because it imputed $10,000 of gross income to Sieg. We, therefore, reverse the circuit court's award and remand the issue to the circuit court for further consideration. On remand, the circuit court should recalculate its child support award in accordance with the

*Woolridge* procedure and Form 14 by making specific findings with respect to how it arrives at the amount of Sieg's gross monthly income.

In his final point, Sieg asserts that the circuit court erred in ordering him to pay $5,000 of Anne Sieg's attorney fees. Because we are remanding the case to the circuit court for further proceedings, we do not consider the issue. The parties may incur additional attorney fees and the circuit court may want to revise its award. Hence, this point is not ripe for adjudication.

JAMES M. SMART, JR., Judge, and JOSEPH M. ELLIS, Judge, concur.

---

2. We recognize that the circuit court probably did not intend to use the term "impute" in its technical sense but simply was indicating that Sieg was making more income than he was willing to admit. Were we to make this assumption, however, we would be speculating, which we cannot do. *Nelson,* 195 S.W.3d at 511–12. We also acknowledge that in making

a child support award, a circuit court, in appropriate circumstances, is entitled to find that a parent's actual income is higher than the income to which the parent himself or herself admits. That option remains available to the circuit court on remand, if the evidence warrants.