**Anisa R. CROSS, Appellant–
Respondent,**

v.

**Justin G. CROSS, Respondent–
Appellant.**

**Nos. WD 71386, WD 71439.**

Missouri Court of Appeals,
Western District.

June 1, 2010.

Application for Transfer to Supreme Court
Denied July 27, 2010.

Application for Transfer Denied
Sept. 21, 2010.

Leonard K. Breon and Carroll G. Leffler, Warrensburg, MO, for appellant-respondent.

Daniel Baker, Sedalia, MO, for respondent-appellant.

Before Division Three: JAMES M. SMART, JR., Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Justin Cross ("Father") appeals the judgment of the trial court that denied his motion to modify child support and granted Anisa Cross's ("Mother") motion to modify child support. Mother cross-appeals the trial court's calculation of the modified child support obligation. We affirm in part and reverse in part.

## Factual Background

Father and Mother were married in August of 1999, and the Circuit Court of Pettis County entered its Judgment Order and Decree of Dissolution dissolving the parties' marriage on March 27, 2007. Two children were born of the marriage, Brooklyn and Gage Cross, who remain unemancipated. As a part of the original divorce judgment, the trial court awarded joint legal custody of the children to the parties but gave sole physical custody to Mother, with Father being allowed specific visitation rights. Additionally, the trial court ordered Father to pay Mother $717 in child support on a monthly basis.

On February 11, 2009, Father filed a motion to modify both custody and child support, alleging that substantial and ongoing changes in circumstances required a reduction in the child support he was paying to Mother.[1] Specifically, Father asserted in his motion that because he had to work so many hours to pay the child support order, this work interfered with his ability to meaningfully parent his children. In response to Father's motion to modify, Mother filed a counter-motion to increase Father's child support on the basis that Father's income had substantially increased since the original dissolution judgment had been entered, and also because the cost of the children's care had increased since the entry of that order.

Shortly after the original divorce judgment, Father took on a second full time job. He continued working both full time jobs until shortly before the filing of this action. On January 29, 2009, Father sent a letter to one of his employers giving two weeks' notice and resigning his position. In that letter he states, "I am currently taking my ex-wife back to court for full custody of my children and have been strongly advised to quit one of my full-time jobs to ensure the chance of victory for my case." He further stated in this letter that he looks "forward to continuing to work with you as soon as my court case is over." Less than two weeks after sending this letter, Father filed his Motion to Modify.

On July 9, 2009, a hearing was held on the motions. The trial court entered its Judgment of Modification of Support, which, *inter alia,* increased Father's ordered child support to $1,034 a month. Further factual details regarding these proceedings will be outlined as relevant in the analysis section herein.

## Standard of Review

The appropriate standard of review for this matter is as follows:

The standard of review in a court tried case, including one pertaining to modification of child support, is set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to

1. Father also originally requested a modification of the custody of the children so that Father would be declared "to be the custodian of the minor children." However, Father dropped this custody modification request at the hearing on the motion.

support it, or unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. A trial court is free to believe or disbelieve all, part or none of the testimony of any witness. We give deference to the trial court's determination of the credibility of the witnesses; and the evidence, with all of the inferences flowing therefrom, is viewed in the light most favorable to the judgment.

*McCoy v. Scavuzzo,* 250 S.W.3d 1, 3 (Mo. App. W.D.2008) (citations and quotations omitted).

## Analysis

### I. Father's Appeal

In Point One, Father argues that the trial court erred in denying his motion to modify because the court should not have determined his income to be the amount he earned while working two full-time jobs.

■ When ruling on a motion for child support modification, there is a two step process under Rule 88.01. The trial court must:

> (1) determine and find for the record the presumed correct child support amount by using Form 14; and (2) make findings on the record to rebut the presumed correct child support amount if the court, after consideration of all relevant factors, determines that amount is unjust and inappropriate. Under the first step, a trial court can either accept a Form 14 amount calculated by a party, or if the court rejects the parties' Form 14 amounts as incorrect, the court must prepare its own correct Form 14 calculation. Either way a trial court chooses to

proceed, the use of Form 14 in calculating child support in a modification proceeding is mandatory, and the record should clearly show how the trial court arrived at its Form–14 amount.

*Crow v. Crow,* 300 S.W.3d 561, 564 (Mo. App. E.D.2009) (citations and quotations omitted).

■ Here, Father failed to offer a Form 14 into evidence, the trial court rejected Wife's proposed Form 14 Worksheet as incorrect based on the evidence presented at trial, and the Court completed its own. " 'In determining whether the trial court correctly calculated the [PCSA], we review the calculation to ensure that not only is it done accurately from a mathematical standpoint, but that the various items and their amounts were properly included in the calculation and supported by substantial evidence.' " *Ricklefs v. Ricklefs,* 39 S.W.3d 865, 870 (Mo.App. W.D.2001) (quoting *Nelson v. Nelson,* 25 S.W.3d 511, 521 (Mo.App. W.D.2000)).

■ Father argues that the trial court erred in generating its Form 14 Worksheet because the Court improperly imputed income to Father.[2] The crux of Father's argument on appeal is that imputation of income "requires a finding of either unemployment or underemployment," and because the Court did not (and could not) make such a finding, it erred when imputing income on Father. We disagree.

■ To support his argument that a specific and articulated finding of unemployment/underemployment is required to impute income as a matter of law, Father cites to Civil Procedure Form No. 14, DIRECTIONS, COMMENTS FOR USE

---

**2.** The trial court used the word "attributes" income rather than the word "imputes" income in its judgment. This Court does not believe this difference impacts our analysis of the issues in this case.

AND EXAMPLES FOR COMPLETION OF FORM NO. 14 ("Directions"). In completing the Form 14 Worksheet, " 'the court is to be guided by the worksheet's directions for completion and comments for use, and the evidence in the case.' " *Ricklefs*, 39 S.W.3d at 870 (quoting *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App. W.D.1996)). However, Father has failed to cite to and analyze the relevant portions of the Directions in making this argument on appeal. Specifically, Father focuses solely on the language that states "[i]f a parent is unemployed or determined to be underemployed, 'gross income' may be based on imputed income." Directions, Line 1: Gross Income, DIRECTION. But nothing in this language states that a specific and articulated finding of unemployment or underemployment is a pre-requisite for income to be imputed to a parent, and Father cites no authority that supports such a holding.[3]

 The relevant determination in deciding "whether to impute income to a parent in calculating the Form 14 PCSA, is whether, applying all relevant factors, including those factors found in Comment H that are relevant, there is evidence to support a finding that the parent is deliberately limiting his or her work to reduce income to avoid paying child support." *Sherman v. Sherman*, 160 S.W.3d 381, 385 (Mo.App. W.D.2004). Comment H of the

Directions is entitled "Imputed Income" and states the following:

When determining whether to include imputed income and, if so, the amount to include in a parent's "gross income," a court or administrative agency *shall* consider all relevant factors, including:

(1) The parent's probable earnings based on the parent's work history during the three years, *or such time period as may be appropriate,* immediately before the beginning of the proceeding and during any other relevant time periods;

(2) The parent's occupational qualifications;

(3) The parent's employment potential;

(4) The available job opportunities in the community; and

(5) Whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home.

Directions, Line 1: Gross Income, cmt. H (emphasis added).

Comment C of the Directions entitled "Overtime Compensation and Secondary Employment" states:

When determining whether to include overtime compensation and earnings from secondary employment and, if so, the amount to include in a parent's "gross income," a court or administra-

---

**3.** Father argues that "[n]either *Ricklefs v. Ricklefs*, 39 S.W.3d 865 (Mo.App. W.D.2001), nor *State ex rel. Stirnaman v. Calderon*, 67 S.W.3d 637 (Mo.App. W.D.2002), allow the imputation of income without a finding of unemployment or underemployment." But we held in both *Ricklefs* and *Stirnaman* that no authority exists to support the "contention that the trial court was required to make an express finding for the record that he was unemployed or underemployed as a precursor to 'imputing' income to him." *Ricklefs*, 39 S.W.3d at 875; *see also Stirnaman*, 67 S.W.3d at 640 ("*Calderon*, like *Ricklefs*, has failed to

direct our attention to any case holding that there must be an express finding for the record that he was unemployed or underemployed as a precursor to imputing income."). Father argues that these cases stand for the proposition that both trial courts made the finding of unemployment or underemployment implicitly and that, therefore, such a finding must be *inferable* from the trial court's judgment. While one could argue that in both *Ricklefs* and *Stirnaman* the trial court did make such an implicit finding, neither case holds that such an implicit finding is a pre-requisite to imputing income. *Id.*

tive agency shall consider all relevant factors, including:

(1) The consequence of exercise by the parent of periods of temporary physical custody or visitation with the children who are the subject of this proceeding on the parent's ability to receive overtime compensation or earnings from secondary employment;

(2) The motivation of the parent in working overtime, including whether overtime was a condition of employment, or in working secondary employment during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;

(3) The amount of overtime compensation and earnings from secondary employment received by the parent during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;

(4) The realistic expectation that the parent will continue to receive the amount of overtime compensation and earnings from secondary employment received during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods; and

(5) The number of additional dependents for whom the parent is financially responsible, whether or not there is an existing court or administrative order under which the parent is paying or receiving support.

Directions, Line 1: Gross Income, cmt. C.

■ A glaring omission from Father's analysis is that he fails to even mention the language of Comments C and H of the Directions, let alone attempt to analyze how their provisions required the trial court to make such a specific finding. Specifically, Comment H states that the trial court shall consider all relevant factors, including the parent's probable earnings. *Id.* cmt. H(1). "In determining probable earnings, the trial court may rely on any time period as may be appropriate under the circumstances." *Ricklefs*, 39 S.W.3d at 875. None of the relevant factors in Comment H are whether the parent is unemployed or underemployed.

■ Moreover, Father's argument on appeal ignores the *purpose* of imputing income to parents. "The theory behind imputing income to a spouse/parent is directed toward preventing a spouse from escaping responsibilities to the family by deliberately or voluntarily reducing his or her income." *Buchholz v. Buchholz*, 166 S.W.3d 146, 152 (Mo.App. S.D.2005). "Imputation of income is proper where a parent has voluntarily reduced his or her income without justification." *Peniston v. Peniston*, 161 S.W.3d 428, 434 (Mo.App. W.D.2005). "The most common scenario for voluntary reduction of income without justification is where a parent deliberately quits work to reduce his or her child support." *Id.*

Here, the circuit court made detailed findings and conclusions that Father voluntarily reduced his income in order to escape his child support responsibilities. In fact, this Court is at a loss as to how the evidence in this case could be interpreted any other way. No more clear indication of Father's intent could be found than his own words in his letter of resignation.

Moreover, the trial court made detailed findings of fact pertaining to Father's "probable earnings," and in doing so, the Court was permitted to gauge "any time period as may be appropriate under the circumstances." *Ricklefs*, 39 S.W.3d at 875. Father does not dispute that for *two*

*years* after the dissolution of his marriage and up to two weeks prior to filing the instant modification motion, he was working two full time jobs and earning $6,053.00 per month. Accordingly, the trial court was warranted in using this figure as Father's gross income when completing the Form 14.

Father asserts that he no longer makes this much income but ignores the detailed findings of the trial court as it pertains to his "probable earnings" in the future, as is set forth in the Form 14 Directions, Comment H(1). There was substantial evidence from which the Court could conclude that Father "quit his second job in order to posture for this custody litigation, though he fully intended to resume that second employment once the litigation had concluded." Specifically, Father's letter of resignation of his second job that he submitted to his employer less than *two weeks* before filing his motion to modify was entered into evidence before the trial court. This is precisely the type of evidence that demonstrates that imputing Father's income was proper because the trial court was free to conclude that Father voluntarily reduced his income so that he could attempt to evade his parental responsibilities. *Peniston,* 161 S.W.3d at 434.[4]

Father argues at length that the reason he quit his second job was to invest time and energy into his family, but the trial court was free to reject these arguments based on the copious evidence that even after quitting this job he neglected his obligations to the two children from this previous marriage: "Respondent claims to need to reduce his hours at work in order to have more family time; however, his behavior does not demonstrate an increased desire to have more family time."

Pursuant to the original divorce judgment, Father was given extensive visitation rights with these two children, but it is undisputed that Father regularly failed to show up for visits, leaving Mother to handle the mess he caused. For example, Father was awarded a six week period in the summer of each year to spend with his children, but Father has never taken the children during this time period. At the hearing, the trial court heard anecdotal stories by Mother that on the rare occasions he was with the children, it was time spent begrudgingly and only after the children instigated contact with Father.

Father further argues that the trial court's computation of the Form 14 essentially requires him to work two jobs and that such a requirement is simply unfair. But this argument ignores the fact that for *two years* Father *voluntarily* chose to work double time. *Bonenberger v. Bonenberger,* 108 S.W.3d 729, 732 (Mo.App. E.D. 2003). In determining whether to include such secondary employment, the Directions expressly provide that the trial court is to weigh the "motivation of the parent in working overtime." Directions, Line 1: Gross Income, cmt. C(2). Here the trial court found:

> Since the dissolution judgment, Respondent has voluntarily taken on additional expenses knowing that he could not afford those expenses without working his second job. These expenses include a new girl friend and a new baby. He now seeks to have his original children bear the burden of these new expenses.

This, coupled with Father's testimony that if his child support was not reduced by the trial court, it was his intention to return to two full-time jobs, and his letter to his previous employer that stated his intention

---

4. Although not critical to our disposition on appeal, the trial court's findings were consistent with a finding that Father was underemployed relative to his *chosen* earning capacity during the relevant two year period in question.

to return to work there as soon as his modification action was concluded, was sufficient evidence to support the trial court's imputation of income to Father.

 " 'The issue presented, when income is imputed to a party, is whether the evidence supports the amount of income imputed.' " *Monnig v. Monnig*, 53 S.W.3d 241, 245 (Mo.App. W.D.2001) (quoting *Honderick v. Honderick*, 984 S.W.2d 205, 212 (Mo.App. W.D.1999)). " 'A parent must have the capacity to earn [the] income which is imputed to him or her.' " *Id.* (quoting *Walker v. Walker*, 936 S.W.2d 244, 248 (Mo.App. S.D.1996)). "A court may consider past, present and anticipated earning capacity in determining the ability to pay child support." *Thill v. Thill*, 26 S.W.3d 199, 207 (Mo.App. W.D.2000). " 'We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion and will not disturb an award of child support unless the evidence is palpably insufficient to support it.' " *Haden v. Riou*, 37 S.W.3d 854, 860 (Mo. App. W.D.2001) (quoting *Thill*, 26 S.W.3d at 207).

Simply put, Father has failed to demonstrate how the trial court's Form 14 was somehow in error, mathematically or otherwise. Father did not offer any Form 14 into evidence. Father has failed to demonstrate that the trial court's figure of $6,053.00 was unsupported by the record for all of the aforementioned reasons.[5]

Our previous opinion in *Sieg v. Sieg* is not controlling on this issue. 255 S.W.3d 20 (Mo.App. W.D.2008). In *Sieg*, the father appealed the judgment of the trial court that modified his child support on the basis that it improperly imputed income on him in calculating its Form 14. *Id.* at 23–25. In dicta, we stated that "[t]o

have imputed the *entire* amount of Sieg's gross monthly income of $10,000, the circuit court would have had to conclude that Sieg was unemployed-not underemployed." *Id.* at 24 (emphasis added).

*Sieg* is inapplicable to this case for two main reasons. First, in reversing the court in *Sieg*, our holding was that, even when considering the evidence in the light most favorable to the trial court's judgment, we could not "discern a sound basis from the evidence presented for a finding that Sieg's monthly income was $10,000." *Id.* at 23. We concluded that this basis alone required that the case be reversed and remanded for the circuit court to "reconsider Sieg's gross monthly income." *Id.* *Sieg* is distinguishable from this case because, as discussed at length above, it is undisputed that for *two years* after the dissolution of his marriage and up to two weeks prior to filing the instant modification motion that Father was working two full time jobs and earning $6,053.00 per month. Second, in *Sieg*, we concluded that that when imputing income, the trial court imputed the *entire* amount of Sieg's gross monthly income of $10,000. *Id.* at 24. But in this case, it is clear from the evidence and findings of the trial court that the entire amount of Cross's income was not imputed to him, but rather only the portion of his income that he voluntarily reduced without justification.

For all of the reasons, Father's Point One is denied.

In Point Two, Father argues that the trial court erred when it modified the child support award because the court mistakenly attributed $100 "of extraordinary child rearing costs to [Mother] because it required [Father] to pay for counseling for

---

5. On appeal, Father submits a Form 14 in his Appendix, which he asserts is his "Proposed Form 14," and states that his gross income should be $3,349.00. We must disregard this Form 14 because it was not offered to the trial court.

the minor children twice in that [Father] already had the obligation to pay for fifty percent (50%) of non-covered health costs in the original Judgment Order and Decree of Dissolution."

In completing its Form 14, the trial court allocated $370.00 of "other extraordinary child rearing costs" of "the minor children for private school and counseling." Father does not dispute that the trial court was justified in awarding extraordinary child rearing costs in the amount of $270.00 as it pertained to the children's private schooling. Rather, Father exclusively challenges the extraordinary costs of $100.00 as it pertains to counseling.

During oral argument, on this matter, both parties stipulated that the $100 of counseling costs for the minor child was no longer being spent on a continuing basis and that this amount should be deducted from the other extraordinary child rearing costs in the Form 14 in this case. Father's obligation to pay half of all uncovered costs of health care for the minor children remains in effect.

## II. Mother's Cross–Appeal

In her sole Point Relied On in her cross-appeal, Mother argues that the trial court erred in completing its Form 14 because the court improperly allowed Father an adjustment to his gross income pursuant to Line 2c for Father's newborn child in light of the fact that this child was born after the entry of the original divorce judgment.

Here, it is undisputed that after the divorce judgment was entered in 2007, Father had a child with another woman, not a party to this action, in 2008. Line 2(c) provides for an adjustment to the gross income for other children who are not part of the current proceeding for which a party has primary physical custody; however, the caveat for Line 2c provides that:

[T]he adjustment available to *the moving parent* in an action to increase or decrease the support payable under the existing order shall be the lesser of: (1) the adjustment to which that parent was entitled for the particular child on line 2a or 2c *when the existing order was entered*, or (2) the adjustment to which that parent is entitled for the particular child on line 2c as a result of an order in another action entered after the existing order.

Directions, Line 2c, CAVEAT (emphasis added).

"Since Husband was the moving party, he was not entitled to any adjustment for the child of his second marriage at the time the original support order was entered, as that child was not born at that time." *Monnig v. Monnig,* 53 S.W.3d 241, 249 (Mo.App. W.D.2001). "Accordingly, the option (1) adjustment under the instructions is zero." *Id.* "Thus, because the adjustment is limited to the lesser of the two options, Husband cannot be entitled to an adjustment on his motion to modify his support obligation." *Id.; see also Durbin v. Durbin,* 226 S.W.3d 876, 881 (Mo.App. W.D.2007) ("The only child shown by the record to be in Father's primary physical custody aside from those involved in this proceeding was the child he had with his second wife subsequent to the dissolution of his marriage to Mother.... Because the Line 2(c) adjustment is limited to the lesser of the two options, Father was not entitled to an adjustment to his gross income.").

Father "does not dispute that when only one parent files a motion to modify an existing child support judgment, that parent is 'the moving parent' and is not entitled to a an adjustment of income as the result of an after-born child." Rather, Father argues that this provision does not

apply to the instant circumstances because he was merely "a moving party" and was not "the moving party," thus rendering the Line 2c Directions inapplicable to the instant case. We disagree.

The Southern District addressed the issue of who constitutes a "moving party" pursuant to Line 2c in the following passage:

> Although we find no definition of "moving party" in any rule or case, we find the following definition of "movant" in Black's Law Dictionary 1014 (6th ed. 1990): "One who moves; one who makes a motion before a court; the applicant for a rule or order." In his "cross motion to modify," Benton prayed for an order "modifying the child support obligation in accordance with Rule 88.01." In oral argument before us, Benton's lawyer conceded that Benton, in his cross motion to modify, was a moving party within the meaning of that term in the directions for line 2.c.

*Bloom v. Bloom (In re Marriage of Bloom)*, 926 S.W.2d 512, 517 n. 8 (Mo.App. S.D.1996).

Father does not dispute that he instigated the current proceedings by filing a motion to modify in February 2009. While it is true that Mother subsequently filed a counter-motion to modify, we do not see how this fact is relevant to our analysis. Specifically, Father fails to cite any authority to support his contention that when a parent files a motion to modify, the Directions do not apply to that parent when a counter-motion to modify is filed by the opposing party. Finally, Father concedes that he does not fall into the category of a "non-moving party," and therefore he does not qualify for the exemption under Line 2c as a matter of law for the aforementioned reasons. *See, In re Marriage of Cohen*, 884 S.W.2d 35, 38 n. 3, (Mo.App. E.D.1994). Therefore, we conclude that the trial court erred in adjusting Father's income pursuant to Line 2c.

Point granted.

### Conclusion

When recalculating the presumed child support award in the appropriate fashion, removing Father's Line 2c adjustment and deducting the $100 of extraordinary child care costs per the stipulation of the parties, the presumed child support amount increases from $1,034 to $1,105 per month. The case is remanded to the trial court with directions to either enter judgment in favor of Mother for child support in the amount calculated by Civil Procedure Form No. 14, as is set forth above, or to enter a finding that the amount calculated is unjust and inappropriate and to enter judgment for child support in an appropriate sum. *Beeman v. Beeman*, 816 S.W.2d 15, 18 (Mo.App. W.D.1991).

All concur.