In re the Matter of: Matthew Aaron SCOBEE, by his next Friend, Kristi ROBERTS, and Kristi Roberts, Individually, Appellant,

v.

**Gail Lynn SCOBEE, Respondent.**

No. WD 73857.

Missouri Court of Appeals, Western District.

March 6, 2012.

Michele C. Puckett–Burkhead, for Appellant.

Kristen C. Johnson, for Respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, JOSEPH M. ELLIS, Judge and GARY RAVENS, Special Judge.

JOSEPH M. ELLIS, Judge.

Kristi Roberts ("Mother") appeals from a paternity judgment entered by the Circuit Court of Clinton County awarding her $750 per month in child support from Gail Lynn Scobee ("Father"), denying her requests for retroactive child support and attorney's fees, and awarding Father the dependency tax exemption for federal and state income tax purposes. For the following reasons, the judgment is affirmed in part, reversed in part, and remanded for further proceedings.

Mother and Father engaged in a fourteen-year relationship. The relationship produced one child, a son ("Son"), born in 1998. In February of 2010, Father ended the relationship, and, on May 24, 2010, Mother filed a paternity action seeking a paternity determination as to Son as well as joint legal and sole physical custody of Son, child support, retroactive child support, and reasonable attorney's fees. On June 21, 2010, Father filed an answer and counter-sued, seeking an order of paternity, joint legal and physical custody of Son, and a reasonable child support obligation as deemed appropriate by the court.

On January 10, 2011, a trial was held at which both Mother and Father testified. Mother testified she was currently unemployed and had been unable to find employment in the small town in which she lived. She also testified that she had worked as the office manager in Father's business during the relationship, but that Father terminated her when he ended the relationship. Since that time, Mother testified she had been unable to find employment, that she was receiving unemployment benefits, and that she had cashed-in her 401(k) to provide for herself and her children.

Mother introduced Father's tax returns for the years 2007, 2008 and 2009, and they were admitted into evidence. According to these returns, Father's adjusted gross income for income tax purposes in 2009 was $176,181 ($14,682 per month). Schedule C for his construction business reflected gross income of $2,095,693 and total expenses of $1,873,784 (including $472,414 of depreciation and one time Section 179 expense), resulting in a net profit of $221,909.

In 2008, Father's adjusted gross income for income tax purposes was $710,458 ($59,205 per month). The construction business had gross income in 2008 of $2,450,864, with total expenses of $1,697,635 (including $480,420 of depreciation and Section 179 expense), resulting in net income to Father of $753,229.

The 2007 income tax return showed Father's adjusted gross income at $206,263 ($17,289 per month). The construction business's gross income for 2007 was $1,391,715, with total expenses of $1,087,354 (including $193,185 of depreciation and Section 179 expense), yielding net profit to Father of $304,361.

Father's tax returns also reflected that Father's total income was reduced by certain adjustments permitted by the Internal Revenue Code, the principal one in each year being his contribution to a Simplified Employee Pension ("SEP") Individual Retirement Arrangement. For 2007, Father contributed $45,000, in 2008 $46,000, and in 2009 $38,603. In each of the three tax years, these amounts were subtracted

from Father's total income to yield the adjusted gross income amounts set forth above.

Mother provided the court with two Form 14s, the first calculating the presumed child support amount ("PCSA") at $2,164 and the second calculating the PCSA at $1,214. In the first Form 14, Mother listed Father's income as $69,000 per month, relying on her analysis of the tax returns to arrive at that amount. In the second Form 14, she listed Father's income as $10,949 per month, the amount Father asserted was his actual monthly income.

On cross-examination, Father's counsel questioned Mother regarding the expenses reflected on her income and expense statement. Counsel generally tried to secure an admission from Mother that only one-third of the expenses listed were attributable to Son because Son was one of three persons residing in the rental home.[1]

Father then testified that because his business performs high-voltage electrical contracting work, such as repairing power lines after storms, his income fluctuates depending upon the amount of inclement weather occurring in the given year. He further testified that the $69,000 net monthly income average Mother used in calculating her first Form 14 did not accurately reflect his monthly income because she failed to take into account other expenses associated with running one's own business, such as the purchase and upkeep of equipment and employee payroll. Father introduced no other evidence of his business income or expenses.[2]

At the close of evidence, the court took the matter under advisement. On March 2, 2011, the court entered its judgment. The court found that Father was Son's biological father and concluded Mother and Father should have joint legal and physical custody of Son with Son primarily residing with Mother. The court also awarded Father the right to claim Son as his dependent for state and federal income tax purposes. After finding both Form 14s submitted by Mother to be unjust and inappropriate, the court awarded Mother $750 per month in child support and denied her request for retroactive child support and attorney's fees.

Mother then filed a post-trial motion requesting the court vacate, re-open, correct, amend or modify its judgment, asserting the judgment was defective in that the court failed to establish a PCSA on the record. On April 22, 2011, the trial court issued an amended judgment. In its amended judgment, the court adopted Mother's Form 14 that set forth the PCSA at $1,214, which it then rebutted as unjust and inappropriate because it concluded that Mother was underemployed. Mother timely filed her notice of appeal.

Mother presents three points on appeal: (1) the trial court erred in awarding her $750 per month in child support and refusing to enforce the award retroactively because the evidence shows Father earns a net monthly income of $69,112.57 in comparison to Mother, who is unemployed with bleak employment opportunities; (2) the trial court erred in refusing to award Mother attorney's fees because the weight of the evidence showed the disparity of

---

1. After Mother and Father's relationship ended, Mother and Son continued to live in the family's rental home along with Mother's then seventeen-year-old son from a previous relationship.

2. Mother testified that Father's attorney had provided documents to her attorney in which Father claimed his income was $10,949 per month, and those documents and Mother's testimony was the basis for use of that amount on Mother's second Form 14.

income and assets between Mother and Father; and (3) the trial court erred in awarding Father the right to claim Son as a dependent for federal and state income tax purposes because Mother is the custodial parent thereby entitling her under state and federal law to receive the tax exemption.

In Mother's first point on appeal, she claims that the trial court's award of $750 in child support is against the weight of the evidence and thereby an abuse of discretion. "In determining an award of child support in any proceeding, § 452.340.8 and Rule 88.01 require the trial court to follow the two-step procedure set forth in *Woolridge v. Woolridge,* 915 S.W.2d 372, 379 (Mo.App.1996)." *Hart v. Hart,* 210 S.W.3d 480, 489 (Mo.App. W.D. 2007) (internal quotation omitted). "First, the court must determine and find for the record the PCSA, in accordance with Form 14." *Ricklefs v. Ricklefs,* 39 S.W.3d 865, 870 (Mo.App. W.D.2001). "Second, the court, after considering all relevant factors, must determine whether to rebut the PCSA as being unjust or inappropriate." *Id.* Thus, "Rule 88.01 creates a rebuttable presumption that the Form 14 amount is the correct amount of child support," and "[t]he burden is on the party seeking to rebut the Form 14 amount to show a need for deviating from that amount." *Haden v. Riou,* 37 S.W.3d 854, 864 (Mo.App. W.D. 2001).

"Our review then of an award of child support is essentially one of the trial court's application of the two-step *Woolridge* procedure, applying the standard enunciated in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)." *Conrad v. Conrad,* 76 S.W.3d 305, 308 (Mo.App. W.D. 2002). "Hence, in reviewing an award of child support, we review the award, in light of the trial court's application of the *Woolridge* procedure, to determine wheth-

er it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Hart,* 210 S.W.3d at 489 (internal quotation omitted). "After reviewing and determining that the trial court's application of the *Woolridge* procedure passes the *Murphy v. Carron* standard, we then review for an abuse of discretion with respect to the trial court's rebuttal review of its PCSA calculation." *Peniston v. Peniston,* 161 S.W.3d 428, 433 (Mo.App. W.D. 2005) (internal quotation omitted). Thus, we "will interfere with the trial court's award only if the trial court abused its discretion by ordering an amount that is against the logic of the circumstances or arbitrary or unreasonable." *Ricklefs,* 39 S.W.3d at 869 (internal quotation omitted).

The first step of the *Woolridge* procedure requires the trial court to "determine and find for the record the PCSA, *in accordance with Form 14.*" *Ricklefs v. Ricklefs,* 39 S.W.3d 865, 870 (Mo.App. W.D.2001) (emphasis added). "Step one is a mathematical calculation the mandatory use of which insures that the child support guidelines will be considered in every case." *Searcy v. Searcy,* 85 S.W.3d 95, 99 (Mo.App. W.D.2002) (internal quotation omitted). In determining the PCSA for the record, the trial court can either accept a Form 14 PCSA calculation of one of the parties or reject the parties' calculations and do its own. *Nelson v. Nelson,* 195 S.W.3d 502, 509 (Mo.App. W.D.2006). "The trial court must reject a party's Form 14 PCSA calculation if: '1) an item is incorrectly included in the calculation; 2) an amount of an item included in the calculation is incorrect; or 3) the mathematical calculation is incorrect.'" *Id.* (quoting *Woolridge,* 915 S.W.2d at 378).

Pursuant to Form 14, the first step in determining the PCSA is calculat-

ing each parent's gross monthly income. The directions for calculating gross income state that "[i]f a parent is unemployed or found to be underemployed, 'gross income' may be based on imputed income." Civ. P. Form No. 14, *Directions, Comments for Use and Examples for Completion of Form No. 14*, Line 1: Gross income, Directions; *see also Cross v. Cross*, 318 S.W.3d 187, 191 (Mo.App. W.D.2010). Thus, "the trial court has discretion to impute income to an underemployed parent." *Lokeman v. Flattery*, 146 S.W.3d 422, 427 (Mo.App. W.D.2004). However, "[t]he Form 14 worksheet and its directions for completion mandate which items are to be considered in the calculation [of the PCSA] and constitute a 'formula' for determining the [PCSA]." *Nelson*, 195 S.W.3d at 509 (internal quotation omitted). Thus, although the trial court has discretion in determining "whether a Form 14 item should be included in a Form 14 calculation under a given factual situation[,] . . . the formula to be employed and the factors to be considered in calculating the [PCSA] *is [sic] not discretionary.*" *Id.* at 509–10 (internal quotation omitted) (emphasis added). Therefore, underemployment is a factor that must be considered when calculating the PCSA for the record under step one of the *Woolridge* Procedure.

In this case, the court did make a finding that Mother was underemployed. Yet the court imputed no income to Mother based upon its finding. Rather, in establishing the PCSA for the record, the trial court adopted Mother's Form 14, which calculated Mother's gross monthly income as $0, and then used its finding of Mother's underemployment to rebut the PCSA as unjust and inappropriate. In finding the PCSA to be unjust and inappropriate, the court emphasized Mother's responsibility to financially contribute to the support of Son, especially "under circumstances where it is apparent that [Mother] is under employed based upon her experience and skills." However, the court's acceptance of a Form 14 calculating Mother's gross monthly income to be $0 does not comport with its subsequent rebuttal of the PCSA as unjust and inappropriate due to Mother's underemployment.

 "The theory behind imputing income to a spouse/parent is directed toward preventing a [parent] from escaping responsibilities to the family by deliberately or voluntarily reducing his or her income." *Cross*, 318 S.W.3d at 192. Underemployment, by its very definition, means that a parent "voluntarily reduces work without justification to avoid paying child support." *Sherman v. Sherman*, 160 S.W.3d 381, 385 (Mo.App. W.D.2004). Thus, the imputation of income in a Form 14 PCSA calculation is aimed specifically at preventing and discouraging parents' underemployment. Accordingly, "[u]nder proper circumstances, the trial court may impute income to a parent based on what that parent could earn through his or her best efforts to gain employment proportionate to his or her capabilities." *Lokeman*, 146 S.W.3d at 427. Therefore, it follows that a trial court seeking to prevent an underemployed parent from escaping his or her share of the financial responsibilities to a minor child may impute income to that parent to accurately reflect what that parent could earn through his or her best efforts to gain employment proportionate to his or her capabilities.

Given this interrelation between a finding of underemployment and the imputation of income, the trial court's acceptance of a Form 14 that calculated Mother's income at $0 is inconsistent with its subsequent finding that the PCSA is inappropriate because Mother is underemployed. As previously discussed, a finding that a par-

ent is underemployed indicates that a parent has deliberately reduced his or her work, and thereby decreased his or her income, in an attempt to avoid paying child support. Thus, in this case, the court essentially found Mother to be deliberately decreasing her income to avoid her obligation to support Son. Yet, instead of imputing income to Mother to offset the decrease in income caused by her underemployment, the court adopted a Form 14 PCSA calculation that showed Mother's gross monthly income at $0, finding it to be "the most appropriate form 14 reflective of incomes adduced into evidence."

Such findings are conflicting and cannot be remedied by the court's subsequent rebutting of the PCSA as unjust and inappropriate. Rather, the Form 14 Directions and Comments for Use indicate underemployment is a factor that courts should consider in a Form 14 PCSA calculation, more specifically in calculating a parent's gross monthly income. Therefore, because underemployment is a factor that affects a party's Form 14 PCSA calculation, it leads to a rejection of a party's Form 14 PCSA calculation, not to the rebuttal of the PCSA calculated therein. Stated another way, a finding of underemployment permits imputation of income, and if the court determines that income should be imputed, and no income, or the incorrect amount as determined by the court, is imputed in the Form 14 before the court, that Form 14 must be rejected because "an amount of an item included in the calculation is incorrect." *Nelson*, 195 S.W.3d at 509.

In this case, the court justified its rebuttal of the PCSA calculated in the Form 14 it adopted by stating that it is unfair and inappropriate to award a PCSA that does

"not consider the necessity of financial contributions of the Mother with regard to an appropriate amount of support for said minor child." However, the appropriate place in which to determine a parent's responsibility for his or her proportionate share of the child support amount is in the calculation of the Form 14 itself. "Form 14 specifically requires calculation of each parent's child support obligation." *Estrem v. Estrem*, 984 S.W.2d 883, 885 (Mo.App. W.D.1999). Thus, "[t]he custodial parent's income must be considered to determine the combined income of the parents and the combined child support costs." *Id.* "The parents' proportionate share of the combined income is then calculated to determine their proportionate share of the total child support costs." *Id.* Therefore, the court's conclusion that Mother's Form 14 PCSA calculation failed to consider Mother's share of the financial obligation to Son should have led to the court's rejection of Mother's Form 14 PCSA calculation and the calculation of the court's own Form 14 in which it imputed income to Mother.

■ Accordingly, the court erred in its treatment of the underemployment issue, and, since "it is axiomatic that before there can be a 'rebuttal' of the [PCSA], the [PCSA] must, in fact, be correctly calculated," *Woolridge*, 915 S.W.2d at 378, we must reverse the court's child support award. The case is remanded to the trial court with instructions to adopt a Form 14 that properly calculates PCSA in accordance with the evidence adduced at trial. Once the trial court has determined its Form 14 PCSA calculation for the record, it can then determine whether there is any basis upon which to rebut the PCSA as unjust and inappropriate.[3]

---

3. At one point in its judgment, the trial court alluded to there being evidence "that the cost

of rearing the minor child in actuality does not exceed or reach the sum of $1,200.00 per

■ As previously discussed, the trial court must "determine and find for the record the PCSA, in accordance with Form 14." *Ricklefs*, 39 S.W.3d at 870. Thus, in determining whether imputation of income is proper in this case, the court must consult the Directions and Comments for Use to Form 14, which set forth five factors for courts to consider in determining whether income should be imputed and, if so, the amount to be imputed:

(1) The parent's probable earnings based on the parent's work history during the three years, or such time period as may be appropriate, immediately before the beginning of the proceeding and during any other relevant time periods;

(2) The parent's occupational qualifications;

(3) The parent's employment potential;

(4) The available job opportunities in the community; and

(5) Whether the parent is custodian of a child whose condition or circumstances make it appropriate that the parent not be required to seek employment outside the home.

*Cross*, 318 S.W.3d at 191 (quoting Civ. P. Form No. 14, *Directions, Comments for Use and Examples for Completion of Form No. 14*, cmt. H) (emphasis omitted). Thus, although these factors are not exhaustive in determining whether income should be imputed to a parent, *Peniston*, 161 S.W.3d at 435, the court on remand should consider them, along with the facts of the case, in determining Mother's gross monthly income.[4]

---

month in total," and at another point suggests that "the form 14 itself is excessive." The only evidence in the record regarding the child's needs came from Mother's Statement of Income and Expense, and Mother's testimony. Mother's Income and Expense Statement reflected total monthly expenses of $3,862. Father's attorney cross-examined Mother briefly regarding the income and expenses she listed, generally trying to secure an admission that only one-third of the expenses were attributable to Son, with the remainder attributable to Mother and her other child. Father's counsel stated that his calculation of the expenses attributable to Son was $1,200.73. This amount is $13.27 less than the PCSA calculated in the Form 14 adopted by the trial court. The thrust of counsel's questioning and closing argument was that the cost of raising the child, whether by counsel's calculation or the PCSA, was approximately $1,200 per month, and that if the court awarded child support in the amount of the PCSA, Father would be responsible for 100% of the child's support.

Since the trial court on remand must adopt a Form 14 that is both supported by the evidence and properly prepared, we need not and do not address the impact this sketchy evidence might have. We do note, however, that "even if the PCSA is unjust or inappropriate, there still must be evidence to support the court's award." *Bearce v. Lewey*, 182

S.W.3d 737, 745 (Mo.App. W.D.2006). And while the trial court is not required to specify the factors on which it based its rebuttal of the PCSA, "[t]he factors that caused the rebuttal and the deviation from the PCSA must be apparent from the record," and "any deviation from the Form 14 amount must be supported by the evidence." *Id.*

4. It is unclear to this court upon what grounds the trial court found Mother to be underemployed. Viewing the record in the light most favorable to that finding, the only evidence on the issue of Mother's employment, or lack thereof, consisted of Mother and Father's testimony. Mother testified that since 2005, she had been working as Father's office manager, where she worked until the point at which Father fired her, and that her only prior work experience was as a housekeeper and nurse's aide nearly fourteen years ago. She further testified that she has only a high school education and lives in a small town where, despite submitting numerous applications at local businesses and hospitals, she has yet to receive an interview. When Father was questioned as to Mother's employment status, he simply stated "I'm pretty sure there are jobs available," but presented no evidence to support his statement. This was the sum total of the evidence on the subject that we can glean from the record. We found no evidence presented even suggesting that

As part of her first point relied on, Mother also claims the trial court erred in denying her request that the child support be awarded retroactively. "Any award for periodic child support may be retroactive to the date of service of the original petition upon the obligor." § 210.841.7. "[A]n award of retroactive child support is discretionary with the trial court" and "would seem to rest upon findings similar to those supporting an award of prospective child support: the financial inability of the custodial parent to provide for all of the child's needs and the noncustodial parent's ability to provide financial assistance in providing for those needs." *Edmison v. Clarke*, 61 S.W.3d 302, 309–10 (Mo.App. W.D.2001). "[W]e will not disturb the circuit court's determination unless we find a clear abuse of discretion." *Hoffman–Francis v. Francis*, 282 S.W.3d 392, 396 (Mo.App. W.D.2009); *see also L.J.S. v. F.R.S.*, 247 S.W.3d 921, 929 (Mo. App. S.D.2008). "An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Hoffman–Francis*, 282 S.W.3d at 396 (internal quotation omitted).

The trial court did not abuse its discretion in refusing to award retroactive child support to Mother. Evidence was introduced that Father voluntarily paid between $1,000 and $1,300 a month to Mother up until the time of the trial. The payments served as child support for Son as well as payment for the utilities, Internet, cable, and cell phone bills. Thus, the court did not arbitrarily or unreasonably refuse to award child support retroactively to the date the paternity suit was filed.

In her second point on appeal, Mother asserts the trial court erred in refusing to award her reasonable attorney's fees because the weight of the evidence showed a disparity in income and assets between Mother and Father. The Uniform Parentage Act permits trial courts to "enter judgment in the amount of the reasonable fees for counsel, experts, the child's guardian ad litem and other costs of the action and pretrial proceedings." § 210.842. Thus, "[t]he trial court is vested with broad discretion in its award of attorney's fees, and we will not disturb that award absent an abuse of discretion." *Mitalovich v. Toomey*, 206 S.W.3d 361, 367 (Mo.App. E.D.2006).

Mother argues that she is entitled to her attorney's fees because "[o]ne [party's] greater ability to pay is sufficient to support an award of attorney's fees to the other [party]." *McNair v. McNair*, 987 S.W.2d 4, 8 (Mo.App. W.D.1998). But the financial position of the parties is not the only factor to consider in determining whether to award attorney's fees. Although the court "must consider the financial position of each [party]," it must also consider "the merits of the case and the actions of the parties during the pendency of the action." *Mitalovich*, 206 S.W.3d at 368 (internal quotation omitted).

Mother voluntarily quit her job, deliberately limited her employment opportunities, refused any job offers, was intentionally failing to use her best efforts to obtain employment, or remained unemployed to avoid providing support for Son.

Thus, even if we assume that the court disbelieved Mother's testimony entirely, as it was entitled to do, *Tadych v. Horner*, 336 S.W.3d 174, 177 (Mo.App. W.D.2011), and found her a completely uncredible witness, it is still a bit of a struggle to see an evidentiary basis for a finding of underemployment. We note that "[w]hile a trial court can rely on reasonable inferences in determining whether to impute income, it cannot rely on speculation." *Sherman v. Sherman*, 160 S.W.3d 381, 397 (Mo. App. W.D.2004).

Although the record reflects a disparity in income between Mother and Father, the court had discretion to consider other factors, including the actions of the parties during the proceedings, in determining whether to award attorney's fees. Thus, because an award of attorney's fees is discretionary and "[t]he trial court's decision as to a request for award of attorney's fees is presumptively correct," *Cohen v. Cohen*, 178 S.W.3d 656, 673 (Mo.App. W.D. 2005) (internal quotation omitted), we find no abuse of discretion in the court's refusal to award Mother attorney's fees. Point two is denied.

 In her third point on appeal, Mother asserts the trial court erred in awarding Father the right to claim Son as a dependent on his federal and state income tax returns because she was entitled to receive it as the custodial parent.[5] Typically, under federal tax law, the custodial parent is entitled to claim the child as a dependent for income tax purposes. I.R.C. § 152(e)(1) (2006); *see also Simon–Harris v. Harris*, 138 S.W.3d 170, 182 (Mo.App. W.D.2004). An exception is made, however, if "the custodial parent signs a written declaration not to claim the children as dependents and the declaration is attached to the noncustodial parent's tax return." *Mehra v. Mehra*, 819 S.W.2d 351, 357 (Mo. banc 1991).

 "[A] trial court has broad discretion in awarding tax dependency deductions" and abuses that discretion only "when its ruling is clearly against the logic of the circumstances before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Simon–Harris*, 138 S.W.3d at 182 (internal quotation omitted). Certainly the trial court is entitled to consider which parent would benefit the most from receiving the dependency deduction. Nevertheless, "the Form 14 PCSA is based, in part, on the assumption that the income tax exemptions will go to the parent receiving the support." *Vendegna v. Vendegna*, 125 S.W.3d 911, 914 (Mo.App. W.D.2004). Thus, before the noncustodial parent can be awarded the right to claim a child as a dependent for income tax purposes, the court must first rebut the PCSA as unjust and inappropriate pursuant to the *Woolridge* standard. *Jarvis v. Jarvis*, 131 S.W.3d 894, 897–98 (Mo.App. W.D.2004).

 Because we are reversing the trial court's award of child support, and the decision on that issue influences the decision regarding the dependency deduction, we likewise reverse as to the latter issue, so the trial court may make an informed decision on that matter in light of its child support award.[6]

In summary, the judgment of the trial court as to child support and the award of the dependency exemption is reversed, and the cause is remanded to the trial court with instructions to enter a child support award and an appropriate order regarding the dependency deduction, all in conformi-

---

5. Mother asserts, and Father does not contest, that she is the custodial parent for federal income tax purposes.

6. We note that if, on remand, the trial court awards Father the dependency tax deduction, it must also properly effectuate that allocation by following the procedure set forth in *Vohsen v. Vohsen*, 801 S.W.2d 789, 791–92 (Mo.App. E.D.1991). To effectuate allocation of the dependency tax exemption to the noncustodi-al parent, "a trial court must order the custodial parent to annually sign the prescribed declaration, presently IRS Form 8332." *Id.* at 792. Additionally, "[t]he court's order should make execution of the declaration contingent upon the custodial parent's receipt of the court ordered child support payments" and a deadline for signing the declaration should be established. *Id.*

ty with the evidence and in accordance with this opinion. In all other respects, the judgment of the trial court is affirmed.

All concur.